THE MANISTIQUE LUMBERING CO. v. JOHN L. WITTER, TOWNSHIP TREASURER.

| 58 | 625 |
| 58 | 634 |
| 61 | 581 |
| 58 | 625 |
| 94 | 198 |

*Taxation of lumber piled on docks.*

Where a lumber company had its principal office in a metropolitan city, but had no yard, and paid no taxes there, it was proper to tax its lumber in the remote township where, by contract with a company that had its mill and storage-room there, it was manufactured and piled on the latter's docks, from which, after remaining until it was seasoned, it was taken by purchasers Act 9 of 1882, sec. 10.

Error to Schoolcraft. (Steere, J.) Nov. 13.—Jan. 6.

58 MICH—40

REPLEVIN.   Defendant brings error.   Reversed.

*Collins & Blackwell, J. F. Carey* and *F. O. Clark* for appellant.

*Charles R. Brown* for appellee, cited as bearing on the statute, *Putman v. Fife Lake* 45 Mich. 134; *McCoy v. Anderson* 47 Mich. 503; *Torrent v. Yager* 52 Mich. 506; *Monroe v. Greenhoe* 54 Mich. 9; *Osterhout v. Jones* id. 228; "storage" does not mean temporary deposit: *Campbell v. Machias* 33 Me. 419; *Desmond v. Machias Port* 48 Me. 479; *Lee v. Templeton* 6 Gray 579; *Ryerson v. Muskegon* 57 Mich.

CHAMPLIN, J.   Plaintiff is a corporation organized under the laws of Michigan for manufacturing purposes. Its principal office for the transaction of business is located in the city of Detroit. It is the owner of large quantities of pine, located on the Manistique river and its tributaries. It neither owns nor hires a mill to manufacture its logs into lumber. Its operations consist in cutting logs and running them down the Manistique river to Manistique, where they are manufactured into lumber under the following contract:

"DETROIT, MICH., May 19th, 1883.
*Mr. Abijah Weston, President of the Weston Lumber Co. and the Chicago Lumbering Co., Present*—DEAR SIR:   As we have heretofore talked, we submit the following as an agreement between your company hereinbefore named, and the Manistique Lumbering Company, concerning the booming and sawing of logs, and piling of lumber from the same, for the said Manistique Lumbering Company.

The Manistique Lumbering Company are to deliver the logs in the jam, the head of which shall be designated by your company, to the Manistique river, and your company are to take the logs from such jam and saw them into lumber in a merchantable, workmanlike manner, and pile same on your docks in a convenient place for shipping, at $3 per thousand feet, board measure. Your company is to have the mill culls for the saw bill, or we to have them and pay the saw bill, at our option; said lumber to be cross-piled in proper form for seasoning and to save the same from staining. The amount to be cut per year to be thirty million, or

whatever of said amount we may deliver as aforesaid during 1883, and about forty millions during 1884, and from forty to fifty million feet per annum thereafter, while the timber of the Manistique Lumbering Company on the Manistique river and its tributaries lasts, as the Manistique Lumbering Company may elect; but they shall give your companies written notice in September of each year of the amount they propose to furnish for the following year, said notice to be mailed to the Weston Lumber Co., at Manistique, Mich. Of course, should you be prevented by reason of fire or other unavoidable accidents from cutting so much, we shall not expect your companies to saw beyond their capacity. Payment for sawing to be made in two months from the end of the month in which the sawing is done.

If this is in accordance with the understanding of our agreement heretofore made, please acknowledge the receipt of this letter at your convenience, and we will consider the contract for sawing closed.

The $3 per thousand feet saw bill before mentioned to cover costs of piling lumber, use of dock, and all other charges upon said lumber. The Manistique Lumbering Co. to take said lumber from the piles hereinbefore mentioned.

Yours, very truly,

THE MANISTIQUE LUMBERING CO.,

[Signed]         By R. A. ALGER, President."

"DETROIT, MICH., June 1, 1883.

*The Manistique Lumbering Co., Detroit, Mich.*—GENTLE-MEN: Your letter of the 19th ult., addressed to the Weston Lumber Co. and the Chicago Lumbering Co., concerning sawing for the Manistique Lumbering Co., has been received and duly considered.

The Weston Lumber Co. accepts the proposition for sawing as named by you, reserving the right to manufacture into shingles such of the Manistique Lumbering Co.'s logs as may be deemed, in their judgment, the most profitable to do, and will charge therefor their regular rate per thousand feet for manufacturing the same.

THE WESTON LUMBER COMPANY,

[Signed]         By ABIJAH WESTON, President."

The lumber was placed in piles upon the dock, and marked with plaintiff's name, and remained there for the purpose of becoming seasoned, which took from three months to a year, according to circumstances. The Manistique Lumber-

ing Company had no lumber-yard in Detroit, and paid no
taxes in Wayne county. The Weston Lumber Company is
a corporation engaged in the manufacture of lumber, and its
mill is located on the west side of the Manistique river, near
its mouth, in the township of Hiawatha. It has extensive
piers and dockage facilities situated in that town. The Chi-
cago Lumbering Company is also a corporation owning and
operating a saw-mill located in the township of Manistique,
near the mouth of the river of that name, and it like-
wise has extensive piers and docking facilities on the east
side of the river. This company has an office for the trans-
action of its business, situated in the township of Man-
istique.

Mr. James McCaul testified that he was a stockholder,
director and secretary of the plaintiff company, and that all
the business of the corporation is directed from Detroit; that
the buying of supplies, directing of the operations in the
woods, and the selling of the lumber are attended to in De-
troit; that all the business of the company is done there;
that contracts for the sale of lumber are made there; and
after the contracts are made for the delivery of the lumber,
it is taken away; the corporation plaintiff delivers it to ves-
sels; that, as it happened, all plaintiff's contracts for sale of
lumber have been made to A. Weston & Sons, of Tona-
wanda, New York. Their vessels, the Tonawanda Barge
Line, have, in most cases, taken the lumber. That when
plaintiff makes a sale of lumber in its Detroit office, it noti-
fies the Weston Lumber Company of that fact; that no
written notice ever has been sent, but informally, giving the
quantity that has to be shipped. At the last sale the repre-
sentative, Mr. Mercereau, was present in the office, and he
was notified that the lumber was sold to A. Weston & Sons.
This witness also testified that the Manistique Lumbering
Company had no other place in the State where it stored its
lumber; that the Weston Lumber Company make reports
to the Detroit office of shipments.

John Mercereau testified that he had resided in Manistique
nine years, and is the only local director of the Manistique

Lumbering Company in the county; that he made reports to the office in Detroit of shipments of lumber made by him under the direction of the office in Detroit; that he also made a like report to A. Weston & Sons. They were made from the shipments, as it was measured onto the vessel. The scaler in the yard makes the measurements, and the books from which the scales are kept are in the office. This witness was the secretary and treasurer of the Weston Lumber Company, and the treasurer of the Chicago Lumbering Company, and a director of both companies. Aside from being the secretary and treasurer of the Weston Lumber Company, he had charge of the office work. He further testified that when he received notices from Detroit of lumber to be shipped he merely filed them in his office as reference for the price that the lumber is sold for, and that was all. He never notified anybody to carry out these orders and directions he received. The means whereby they were carried out were that A. Weston & Sons ordered the lumber as they wanted, "and we filled their orders." They send their orders to the Chicago Lumbering Company usually, and the superintendent of that company attends to the shipping of the lumber. He has charge of shipping all the lumber manufactured at the mills. It appears from the testimony of this witness that the Chicago Lumbering Company keeps an account of all the sawing done at each of the mills, as well its own as the two mills belonging to the Weston Lumber Company, and also the expense of tallying, and the amount of lumber shipped at Manistique sold by the plaintiff, the amount of lumber piled in the different piles, and the quantity, when known. Everything is entered upon the books of the Chicago Lumbering Company, and from these books the reports are made to the plaintiff at Detroit, monthly; and at the end of the year the expense of tallying is settled up. A. Weston & Sons notify and direct the Chicago Lumbering Company from Tonawanda the kind and dimension, as well as quantity, they desire shipped at Manistique of the lumber purchased from plaintiff, and this company fills the order from plaintiff's lumber on the dock, it enters the shipment upon its

books, and sends plaintiff a copy thereof, and another copy to A. Weston & Sons.

The witness, William H. Hill, who was the superintendent of the Chicago Lumbering Company, gives a very clear and distinct statement of the mode of operations at the mills, and the piling and shipment of lumber. He says that he has charge of shipping the lumber belonging to the Manistique Lumbering Company cut at the mills of the other two companies; that he receives his directions as to shipping principally from A. Weston & Sons of Tonawanda—sometimes by letter and sometimes verbally from Mr. Weston, when at Manistique—and he ships according to those orders; that the lumber is stacked up for seasoning before shipment. The average time would be three months, if before navigation closes; after that it would be six, nine months, or a year. That which is made in the latter part of the season remains over until the next shipping season.

It is an admitted fact in this case that the plaintiff had quite a large amount of lumber and logs in the township of Manistique, upon which a tax of $2317.74 had been assessed for the year 1884, and by virtue of the tax-roll and warrant, the defendant, as township treasurer, had seized the lumber replevied in this case; that plaintiff refused to pay the tax, claiming that it was not liable to be taxed upon said logs and lumber.

The statute (Act No. 9, Sess. Laws 1882) under which the property of plaintiff was assessed, reads as follows:

"Sec. 10. All personal property, except as hereinafter provided, shall be assessed to the owner in the township of which he is an inhabitant, on the second Monday of April of the year for which the assessment is made.

Sec. 11. The excepted cases referred to in the preceding section are as follows, viz.: *First.* All goods and chattels situate in some township other than where the owner resides shall be assessed in the town where situate, and not elsewhere if the owner or person having control thereof hires or occupies a store, mill, place for sale of property, shop, office, mine, farm, storage, manufactory or warehouse therein, for use in connection with such goods and chattels."

Another section provides that all corporations not paying a specific tax shall be assessed the same as natural persons, and their residence shall be deemed to be where their principal office for the transaction of business in this State is located.

The defendant claims that the personal property of the plaintiff which was assessed in the township of Manistique was properly and legally assessable there, and not elsewhere, for three reasons, specified in the statute above quoted, namely:

*First.* It hires and occupies a place for the storage of its lumber in Manistique township. ·

*Second.* It has a place for sale of property in that township; and

*Third.* The plaintiff, or person having control of its personalty, has an office in the township of Manistique.

The contract for sawing the logs which plaintiff runs down the Manistique river, and for piling the lumber on the docks, and the testimony relative to the disposition of the lumber so piled, strongly impresses me with the correctness of the first position taken. In the first place, in regard to the logs, which constituted a portion of the property assessed. They had reached their destination when delivered into the store booms of the Weston Lumber Company. They were then in control of the Weston Lumber Company, to be manufactured under the contract, and it occupied these booms as a place of storage, and used it as such in connection with the logs. I think, while these logs were stored in the booms of the Weston Lumber Company, they were legally assessable as the personal property of the plaintiff in that town. Of course, it is understood that I allude to such logs as were delivered to the Weston Lumber Company, and were stored in its booms, at the time the law requires property to be assessed for taxation, in the township of Manistique. As to the lumber there piled on the docks, the case is much clearer in favor of the legality of the assessment. By express stipulation between the parties to the contract, " the $3 per thousand feet saw bill, before mentioned, to cover costs of piling

lumber, use of dock, and all other charges upon said lumber; the Manistique Lumbering Company to take said lumber from the piles hereinbefore mentioned." Here, by the contemplation and intent of the parties, the lumber was to be stored upon the dock where piled, and compensation for the use of the dock for that purpose was included in the three dollars called the saw bill. It was piled upon the dock, and was to remain there until seasoned and fitted for market, precisely the same as it would be had plaintiffs rented or occupied a distinct and separate mill-yard for the same purpose. They sold the whole cut of their logs to A. Weston & Sons, of Tonawanda, but plaintiffs were to deliver the lumber to them at Manistique, on board their vessels, and from these piles. Weston & Sons directed as to the manufacture of the lumber, and they selected from the lumber so piled the kind and particular lumber to be delivered, under orders which they drew as they desired, in just the same manner as they would in making purchases from any other lumber-yard. The law required the supervisor to assess all property to the owner on the second Monday of April of the year in which the assessment is made. The proofs showed that lumber not sufficiently seasoned for shipment at the close of navigation was stored in piles on the docks until the next season of navigation opened. The lumber, therefore, which the supervisor found to assess had been upon the docks at least six months. During all the time it remained on the docks the title and possession of the lumber remained in the plaintiffs. It did not pass to A. Weston & Sons until delivery on board their vessels. The Chicago Lumbering Company acted for the plaintiffs in making such delivery. It received the orders from A. Weston & Sons; caused the lumber to be shipped according to those orders, at plaintiff's expense; furnished to plaintiffs and to A. Weston & Sons a bill of lading or statement, showing the quality, kind and price. It entered every transaction upon its books, which were the recognized source of information to all parties concerned in the lumbering business at that point. The number of the piles of lumber, and

the time when each was capped or completed, was made and kept, in form of a chart, by the Chicago Lumbering Company. In all these things the Chicago Lumbering Company acted as the agent of the Manistique Lumbering Company.

The facts appearing in the record are abundant to show that the Chicago Lumbering Company was the agent of the Manistique Lumbering Company, and, aside from making contracts for sawing and sale of lumber, its business was carried on through its agent at Manistique. This portion of its business was local in its character, and permanent in duration, so long as the business is or shall be carried on under existing arrangements.

These facts plainly distinguish this case from the former decisions of this Court, which are relied upon by the counsel for the plaintiff as sustaining its claim that the assessment upon which the tax was levied was illegal; and calls for a decision contrary to those. By so holding, no injustice is done to the corporation plaintiff. It is not denied that it owned the property assessed. Neither is any claim made that its property was overvalued. It was assessable therefor either at Detroit or Manistique; and it was not assessed in Detroit. We refrain from passing at this time upon the 'question as to whether this is the appropriate or even permissible remedy under the statute regulating the action of replevin, as no point is made upon it, and the parties have stated in their stipulation that it is their desire to litigate only the question of the liability of the plaintiff to be taxed in said township upon logs and lumber.

Under the facts disclosed in the record we hold that the plaintiff is liable for the tax assessed in the township of Manistique, and therefore

Reverse the judgment of the circuit court, and order a new trial.

CAMPBELL, C. J. and MORSE, J. concurred. SHERWOOD, J. concurred in the result.