THE PETRIE LUMBER COMPANY v. WILLIAM P. COLLINS, MARSHAL OF THE VILLAGE OF NORTH MUSKEGON.

*Taxes—Assessment of property of corporation in partnership name —Curative statute of 1882.*

December 21, 1883, a corporation was organized by two of three copartners and the vendee of the third, which succeeded to the firm property and business, which it afterwards prosecuted at the old stand, the copartnership being dissolved. In 1884 the proper assessing officer assessed said property in the copartnership name, and the taxes were paid by the corporation. In 1885 he made a similar assessment, after conversing with one of the copartners, then a stockholder in the corporation, who did not inform him of the change of ownership, of which the assessor was ignorant. The assessment was in all other respects regular, and the corporation was not assessed in any other way on said property.

*Held,* that the rights of the corporation were not prejudiced by the mistake in the assessment, and that, under section 84 of the tax law of 1882, the tax assessed in the copartnership name is a valid one against the corporation, and may be enforced as such.[1]

Error to Muskegon. (Russell, J.) Argued April 13, 1887. Decided May 5, 1887.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*Nelson DeLong (Keating & Dickerman,* of counsel), for appellant.

*Delano & Bunker,* for plaintiff.

MORSE, J. In July, 1885, the defendant, as marshal of the village of North Muskegon, levied upon six piles of lumber to satisfy a tax which was assessed in said village in the name of A. H. Petrie & Co.

---

[1] See *Michigan Dairy Co. v. McKinlay,* 38 N. W. Rep. 469.

The plaintiff, an incorporated company, brought this suit in replevin to recover possession of this lumber, claiming to be the owner thereof, and recovered judgment in the circuit court for Muskegon county for nominal damages.

The lumber was the property of plaintiff, but defendant resisted the right of possession claimed by it, on the ground that the tax by virtue of which he seized it was a valid tax against the plaintiff.

The village of North Muskegon is located in the township of Laketon, and the village assessor who made the assessment was supervisor of said township for the years 1883 and 1884. The tax in question was assessed in 1885. It was assessed upon the property, real and personal, of the Petrie Lumber Company, but by mistake was entered upon the assessment roll as a tax against A. H. Petrie & Co.

Prior to December 21, 1883, Albert H. Petrie, William McMillan, and Hiram N. Gilman were carrying on business as copartners in said village under the name and style of A. H. Petrie & Co. They were running a saw-mill and manufacturing lumber. On that day the present corporation, the plaintiff, was organized, Petrie and McMillan became stockholders in the company, and one Mark Harding took the place of Gilman. With this exception, the parties interested in the copartnership and the corporation are the same. The corporation carried on the same kind of business as the partnership had, and at the same place. It is also plain from the testimony that the copartnership was dissolved and ceased at the time of the incorporation, and existed no longer. The corporation virtually succeeded, and took the place, property, and rights of the copartnership.

William McMillan, one of the partners and a stockholder in the corporation, testified that, when the corporation was organized, all the property of A. H. Petrie & Co. was put into it, and that the business such corporation was engaged in at the time the assessment was made was the same identical

business that A. H. Petrie & Co. had been engaged in. Gilman sold his interest in the partnership to McMillan before the organization of the corporation, and McMillan then transferred to Harding an interest in the corporation. The corporation, then, is but A. H. Petrie & Co. under a new name, and there was in reality no firm of A. H. Petrie & Co. in existence at the time this assessment was made, other than as it was represented by the corporation into which it had been merged. No other tax was levied upon the property of this corporation in the village of North Muskegon. The real estate was assessed at $13,000, and the personal at $4,500.

The plaintiff claims, and the court below so held, that the assessment is in effect a judgment, and the warrant attached to the tax roll an execution; that, therefore, there being no judgment or execution against the plaintiff, its property could not be seized under this assessment, which was directed against another party.

We think the court was in error in its conclusion. The property against which the tax was assessed was the property of plaintiff, and subject to taxation. This tax was assessed under the law of 1882, as the law of 1885 did not take effect until June 9, 1885.

Section 84 of Act No. 9, laws of 1882, provided that—

"No tax assessed upon any property, or sale therefor, shall be held invalid on account of any irregularity in any assessment, or on account of any assessment or tax roll not having been made or proceeding had within the time required by law, or on account of the property having been assessed without the name of the owner, or in the name of any person other than the owner, or on account of any other irregularity, informality, or omission, or want of any matter of form or substance, in any proceeding that does not prejudice the rights of the person whose property is taxed."

The rights of the plaintiff were not prejudiced by this mistake in the name of the assessment. It is not pretended that the tax is too high or invalid for any other reason, nor has the corporation paid any tax whatever upon this property

to the village of North Muskegon, nor is it liable for any other than the one in question here. Indeed, the counsel for plaintiff realize the force and curative power of this statute, but endeavor to avoid it by contending that the validity of the tax is not in question, but the manner of enforcing payment thereof; and then proceed to treat the assessment roll, and the warrant attached thereto, technically as a judgment and execution against some other person than the plaintiff.

The assessor testified that in 1883 and 1884 he made the assessment of this same real estate against A. H. Petrie & Co., and in 1885 was not aware that there had been any change in the business, or the name of it, and when he went to take the assessment he found Mr. Petrie and McMillan upon the premises, and talked with Petrie about the assessment, and was not informed by him of any change in the name or ownership of the business. The assessment roll of 1884 showed this property to have been assessed that year in the name of A. H. Petrie & Co., and the taxes were paid. Under these facts, and the curative statute above referred to, it must be considered, in my opinion, that the tax on the roll in the name of A. H. Petrie & Co. was in fact a tax, and a valid one, against the plaintiff. The marshal had a right to treat and enforce it as a tax against plaintiff, and he can justify the taking of the goods and chattels in question, where it appears that a mistake has been made in the name by the assessor, to pay a tax which the corporation would have been legally responsible for had its true name appeared upon the assessment roll, and the warrant attached thereto, the tax being in other respects justifiable and regular. *Farnsworth Co. v. Rand*, 65 Me. 19.

It also appears clearly enough that the corporation in fact was known as well by one name as the other. No tax should be defeated because of a mere technicality which does not in the least affect or prejudice the rights of the party against

whom it is sought to be collected. If this were a valid tax against plaintiff,—and we think it was as it stood upon the assessment roll,—then it could be enforced and collected in the same manner as any other valid tax.

For the purposes of this tax, under the curative statute referred to, it must be held that the warrant ran, in effect, against plaintiff. As the case stood in the court below, judgment should have passed for the defendant.

The judgment entered in the Muskegon circuit court is therefore reversed, with costs to the defendant, and a new trial granted.

The other Justices concurred.