ARTHUR HILL v. HARVEY GRAHAM, TREASURER OF THE TOWNSHIP OF BRUCE.

*Taxes—Assessment of copartnership personalty—Error in name of firm—Logs in transit—Replevin—Charge to jury.*

1. The provision of section 5, Act No. 153, Laws of 1885, that the firm name shall be used in assessing property owned or occupied by a copartnership whenever the name of the owner or occupant is required to be entered upon the assessment roll, is

| 72 | 659 |
| 74 | 122 |

| 72 | 659 |
| 85 | 20 |

| 72 | 659 |
| 91 | 633 |

| 72b | 659 |
| 94 | 199 |
| 94 | 218 |

| 72 | 659 |
| 104 | 425 |

| 72 | 659 |
| 107 | 666 |

| 72 | 659 |
| 117 | 213 |
| 117 | 214 |
| 117 | 487 |

| 72 | 659 |
| 118 | 454 |

| 72 | 659 |
| 123 | 359 |

directory, and must be construed in connection with section 89 of the same act, which declares that no tax shall be held invalid on account of having been assessed in the name of any other person than the owner.

2. The decision in this case, and in *Lumber Co. v. Collins*, 66 Mich. 64, and in *Dairy Co. v. McKinlay*, 70 Id. 574, in so far as the question of the assessment of personal property in a firm name is involved, is based upon the facts appearing in the record, that the assessment was made and the collection sought to be enforced against the rightful owners, and that the roll contained sufficient notice to them that their property was assessed, the underlying principle being that a person whose property is liable to assessment for taxes shall not be permitted to evade payment of his just proportion of the public burden by any errors, omissions, or irregularity that do not prejudice his rights.

3. A request which asks the court to charge the' jury what the evidence shows is rightly refused.

4. The charge of the court on the question of when logs are in transit is held as favorable to the plaintiff, at least, as he had a right to expect.

5. Replevin will not lie for saw-logs seized to satisfy taxes assessed thereon in a township where the logs were liable to assessment, which assessment appears by the roll to be in all respects regular and valid. *Hood v. Judkins*, 61 Mich. 576 (head-note 5).

Error to Chippewa. (Steere, J.) Argued October 12, 1888. Decided November 28, 1888.

Replevin. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*G. K. Grout* (*D. P. Foote*, of counsel), for appellant.

*John H. Goff* (*George A. Cady*, of counsel), for defendant.

CHAMPLIN, J. This is an action of replevin brought by James H. Hill, Wilbur H. Hill, and Arthur Hill, then composing the firm of James H. Hill & Sons. James and Wilbur having died since the commencement of suit, and their deaths having been properly suggested

of record, the case proceeded, and now stands as above entitled.

On June 2, 1885, James H. Hill, Wilbur H. Hill, and Arthur Hill, composing the firm of James H. Hill & Sons, resided at Saginaw; and had their business office at East Saginaw, and were engaged in general lumbering business. On that day they entered into a contract with James Redy to cut and put afloat in the Munoskong river, and to run and deliver at its mouth, all the pine timber on lands belonging to said firm, or either member thereof, in township 45 N., ranges 1 E. and 1 W., 44 N., range 1 W., and certain specified lands in township 44 N., range 1 E., the whole work to be completed on or before July 1, 1887.

In the winter of 1885–86, Redy had cut and banked about 10,000,000 feet of saw-logs. The Munoskong river is a stream down which logs are run to the St. Mary's river. Its course passes through the townships of Bruce and of Pickford. When these logs were cut, the owners designed them to be run to the mouth of the St. Mary's river, and from thence be transported in rafts to Saginaw, to be there manufactured into lumber. But, by the course of events subsequently to the bringing of this suit, the design to manufacture them at Saginaw was not fully carried out, and many of them were sawed into lumber at Detour, in said county of Chippewa.

On the second Monday of April, 1886, the supervisor of Bruce township went to the place in his township where the logs were banked, and found the creek bed, which was a small stream, piled full of logs, and also piled back from the creek on dry land a distance of 100 yards. These logs were in piles on the dry ground, and he estimated that there were 11,000,000 feet of them. The creek was frozen up, and the logs were not being run, although preparations were being made to run them

when the creek, or " river," as it is called, should be in condition for running logs. The supervisor assessed the logs as personal property, and entered the same upon his assessment roll as follows: Under the heading upon his roll of—

" Name of Owner or Occupant," " James H. and Arthur Hill & Co. Logs in sections 30 and 32 and 33 and 22, T. 45, 1 E., and sections 23 and 14, T. 45, 1 W.,— amounting to (6,000,000) six million, at ($5) per thousand. Said logs marked 'N I C E;'"—

And under the heading " Personal Estate Assessed," he entered the assessment at $30,000. This assessment went before the board of review, and the assessment was entered, in the column headed "Value as fixed by Board of Review," at the sum of $30,000.

About July 24 of that year, the supervisor who made the assessment resigned, and another person was appointed to act in his place. This supervisor took it upon himself, without authority, to alter the assessment upon the roll, by striking out the 6,000,000, and inserting 4,000,000, as the quantity of logs assessed, and by striking out $30,000, and inserting $20,000, as the amount assessed in the column as fixed by the board of review. In this condition the assessment roll went before the board of supervisors, and subsequently the taxes were extended upon the roll by the supervisor, and it was placed in the hands of the township treasurer for collection.

The counsel for plaintiff made four written requests to charge, all of which were refused as presented, said requests reading as follows:

" 1. If the jury find that the plaintiffs did not compose the firm of J. H. & Arthur Hill & Company, on the second Monday of April, 1886, then their verdict should be for the plaintiffs.

" 2. If the jury find that the logs of the plaintiffs had been placed on skidways on the banks of the river, and in the river, and were so situated on the second Monday of April, 1886, and had been thus placed with the intention of running and driving them

to their destination, outside of the township of Bruce, as soon as the stage of water in the river would permit, then all the logs would be in transit, and not liable to assessment in the township of Bruce for the year 1886, and their verdict would be for the plaintiffs.

" 3. The evidence in this case shows that the plaintiffs, James H. Hill, Wilbur H. Hill, and Arthur Hill, are the general owners of the logs in question, and entitled to their possession, if the claim made by the defendant is not valid. The defendant, shortly before the writ in this cause was issued, as treasurer of the township of Bruce, in this county, seized and took into his possession these logs, under and by virtue of the tax roll of the township of Bruce for the year 1886, and the warrant annexed thereto, to satisfy a personal property tax assessed against 'James H. & Arthur Hill & Co.,' and defendant claims a right to the possession of the property under and by virtue of said tax roll, and the right to satisfy said tax by a sale of such property. The statute under which the tax in question was assessed, and is sought to be enforced, provides that, 'for the purpose of assessing property and collecting taxes, a copartnership shall be treated as an individual, and, whenever the name of the owner or occupant of property is required to be entered upon the assessment roll, if such property is owned or occupied by a copartnership, the firm name shall be used.' We must look to the official tax roll to discover against whom property is assessed, and cannot be aided by parol testimony. The assessment in this case was against James H. & Arthur Hill & Co., and the evidence in the case shows that the plaintiffs do not, and on the second Monday of April, 1886, did not, compose, and in fact never composed, the firm of James H. & Arthur Hill & Co., and never did business under that firm name, and that neither of them ever belonged to such a firm. It therefore follows, as a matter of law, that the tax was not assessed against these plaintiffs, and their property could not lawfully be taken to satisfy it, and your verdict should be for the plaintiffs.

" 4. The evidence in this case shows that on the second Monday of April, 1886, one of the plaintiffs resided in the city of East Saginaw, and the other two in the city of Saginaw, in this State, and that they did not, nor did either of them, on that day reside in the township of Bruce, and that they did not have control of, nor hire, nor occupy, a store, mill, office, mine, farm, storage, manufactory, or warehouse in said township 'for use in connection with these logs,' and that the logs in question, and other logs, were cut by James Redy from lands belonging to plaintiffs in this county, during the winter of 1885 and 1886, and were in the usual way of doing such business, and as fast as they were cut, taken to a banking ground in said township, on the banks of the Munoskong river,

a navigable stream, or left upon the bank thereof, to be put into the stream as soon as the condition of the water would permit, to be run to the mouth of said stream, and from there to be towed to a point upon the Saginaw river, as the place of their destination, to be manufactured into lumber; that on the second Monday of April, 1886, a considerable portion of the logs so taken by plaintiffs from their lands were already run and floated down said stream, beyond the limits of said township, and plaintiffs were engaged in putting the remainder thereof into the stream to be run, towed, and transported to said Saginaw river. Such appearing to be the facts, and it also appearing from the evidence in the case that there was no sorting ground of any rafting and driving agent or booming company on said river in said township of Bruce, and that said township was not nearest to the mouth of said river, it follows, as a matter of law, that these logs could not legally be assessed to the plaintiffs in the township of Bruce, and they be required to pay a personal property tax thereon; and your verdict must be for the plaintiffs."

1. There was no evidence in the case tending to prove the existence of a firm by the name of James H. & Arthur Hill & Co., or that either of the plaintiffs was a member of such firm. The plaintiffs showed that the plaintiffs, James H. Hill, Wilbur H. Hill, and Arthur Hill, composed the firm of James H. Hill & Sons, and that these individuals, as such firm, owned the logs assessed. The first and third requests are based upon the fact that the logs were not assessed in the proper firm name, and attention is called to the statute which provides that,—

"For the purposes of assessing property and collecting taxes, a copartnership shall be treated as an individual, and whenever the name of the owner or occupant of property is required to be entered upon the assessment roll, if such property is owned or occupied by a copartnership, the firm name shall be used."

This section is directory merely, and must be construed in connection with section 89 of the same act, which declares that—

"No tax assessed upon any property shall be held

invalid on account of having been assessed in the name of any other person than the owner."

The point has been twice ruled against the plaintiffs' position by this Court. The first case was that of *Petrie Lumber Co. v. Collins*, 66 Mich. 64 (32 N. W. Rep. 923). In that case a tax was assessed and levied against "A. H. Petrie & Co." upon the roll, when in fact the property assessed, which was both real and personal estate, belonged to the Petrie Lumber Company, a corporation. This Court held, under a statute of 1882, which is the same in terms with that of 1885, above quoted, that such assessment was valid, and authorized the township treasurer to collect it by levy and sale of the property of the Petrie Lumber Company.

The other case was that of *Michigan Dairy Co. v. McKinlay*, 70 Mich. 574 (38 N. W. Rep. 469). In that case the tax was assessed and levied against "D. P. Clay or the Michigan Dairy Co." The Michigan Dairy Company in fact owned the property, and the township treasurer levied upon and sold the property of the Michigan Dairy Company to collect the tax assessed as personal property. The company brought trover against the collector. We held that the assessment came directly within the terms of the curative statute above quoted, and was also ruled by the case of *Lumber Co. v. Collins*.

In this case the property assessed belonged to the plaintiffs, and their property was seized to enforce payment of the tax. We do not see that the rights of the plaintiffs, whose property was taxed, were prejudiced by the mistake of inserting the wrong name as owner. The names of two of the owners appear in the assessment, and it cannot be claimed that the owners were misled, or made to believe that their property was not upon the assessment roll, or that there was not a sufficient notice of an assessment against their property contained in the roll to

call upon them to appear before the supervisor or board of review to object to any assessment against their property appearing upon the assessment roll. It must be held, therefore, that the assessment roll contained, so far as appeared from the face of the roll, a valid assessment and tax against the property of the plaintiffs, which it was to all appearances their duty to pay.

This case, as well as the two above referred to, where this point was involved, may be considered as being based upon the facts appearing in the record, that the assessment was made and the collection sought to be enforced against the rightful owner, and that the roll contained sufficient notice to him that his property was assessed. The underlying principle is that a person whose property is liable to assessment for taxes shall not be permitted to evade payment of his just proportion of the public burden by any errors, omissions, or irregularities that do not prejudice his rights. *Tyler v. Hardwick,* 6 Metc. 470; *Westhampton v. Searle,* 127 Mass. 502; *Sargent v. Bean,* 7 Gray, 125; *State v. Vanderbilt,* 33 N. J. Law, 38; *Farnsworth v. Rand,* 65 Me. 19; *Shoup v. Railroad Co.,* 24 Kan. 547.

2. The remaining request relates to the question of whether the logs were taxable in the township of Bruce. The request was rightly refused, for the reason that it asked the judge to charge the jury what the evidence showed. Had he done so, he would have been invading the province of the jury. Upon the subject of the request, he charged the jury as follows:

"The logs in question are what is classed in our tax laws as 'forest products,' and we have a recent statute in this State which provides that property of that class, owned by residents or non-residents, shall be assessed to the owner, or to the person having control thereof, in the township or ward where the same may be, except that where such property is in transit to some place

within the State it is to be assessed at such place.    All forest products in transit on the second Monday in April, and thereafter found in the waters or streams of this State, shall be held to have a place of destination at the sorting grounds nearest the mouth of such stream, unless the contrary is made to appear.

" The law also provides that logs, lumber, pickets, telegraph poles, ties, and other forest products, if piled or left in any yard, railroad reserve, shed, or any other place, shall not be deemed in transit, but are to be assessed to the owner in the township where they are found.    Therefore it becomes an important question in this case whether or not logs were in transit.    If they were, they were not liable to taxation in Bruce township, and the plaintiffs are entitled to your verdict.    If they were not in transit, they would, under the undisputed evidence, be liable to taxation there.

" When we speak of goods in transit, we mean on the way or passage, while going from one place or person to another, in the course of business or commercial dealing.

" So if you find that on the second Monday of April, 1886, the plaintiffs were driving the logs of which the logs in this suit formed a part, towards their destination, or were breaking the rollways and jams for that purpose, or were working upon them in the ordinary way, with a view of driving them towards their destination, or as many of them as the stage of water in the river would permit, then the logs would be in transit, and not liable to assessment in the township of Bruce for that year; and your verdict will be for the plaintiffs.

" But if you find from the evidence that the logs in question were not in the waters or streams in question; were not actually started on their way or passage down it, but in unbroken piles, awaiting the breaking up of the river or rise of water, or some future event, before starting,—the mere intent of the owners, unaccompanied by any acts showing their present purpose to drive the logs, would not justify you in regarding the property in transit.

" What was the condition of these logs on the second Monday of April, 1886, and what, if anything, was being done with them at that time, are disputed questions of fact, for you to decide from the evidence.    If you find that the logs were in transit, your verdict will be for the

plaintiffs, that they are entitled, and were at the time of the commencement· of this suit, to their property. If you find that defendant did not unlawfully detain the property replevied, then, by' virtue of his seizure, he had a lien to the amount of the tax against the logs, to wit, $680, and, having waived a return of the property, would in such case be entitled to a verdict for the amount of his lien."

This charge fully covered the ground, and was as favorable to the plaintiffs, at least, as they had a right to expect; and, the jury having passed upon the facts, holding, as their verdict shows, that the logs were not in transit, the case is presented then of a seizure of property to satisfy a tax which appears upon the roll to be regularly assessed in a township where it was subject to be assessed, and in all respects presumably regular and valid. The statute is plain, and forbids replevin—

"For any property taken by virtue of any warrant for the collection of any tax, assessment, or fine in pursuance of any statute of this State,"—

And before the writ can be executed an affidavit must be annexed thereto, stating that the property described in the writ—

"Has not been taken for any tax, assessment, or fine levied by virtue of any law of this State." [1]

We think this case comes within the prohibition of this statute. We should not, therefore, consider the questions raised, based upon an unauthorized alteration of the roll by the assessor after he had received it from the board of review. The court committed no error in permitting a recovery for the amount of the tax lien. *Hill v. Wright*, 49 Mich. 229 (13 N. W. Rep. 528).

As was said in the case cited:

---

[1] How. Stat. §§ 8318, 8321.

"If the plaintiff has been legally wronged, he must seek redress in some other way than by replevin."

The judgment is affirmed.

The other Justices concurred.