WILLIAM MAURER ET AL. v. CHARLES H. CLIFF, SUPERVISOR, ETC.

*Taxes—Forest products—Property in transit—Omission of personalty from assessment roll—Mandamus.*

1. A *mandamus* will not be granted to compel the assessment of taxable personal property, which has been omitted from the roll,

at a time when the owner will be deprived of the substantial right of a review of the assessment, either as to the amount, or, if the property is assessed elsewhere, the legality of that assessment.

2. Logs and lumber piled along a railroad track, awaiting the convenience of the owner or the facilities for shipment, are not *in transit*, within the meaning of the tax laws of 1885 and 1891, and are liable to assessment in the township where situate.

3. In such a case the fact of the existence of contracts to load the logs and lumber, or that some event has transpired to prevent shipment, or that it is the intention of the owner to ship in the near future, should have no weight with the supervisor.

*Mandamus.* Argued November 29, 1892. Denied December 1, and opinion filed December 22, 1892.

Relators applied for *mandamus* to compel respondent to list and assess certain personal property. The facts are stated in the opinion.

*L. B. Fletcher* and *Charles W. Nichols,* for relators.

*Sharpe & Sharpe,* for respondent.

McGRATH, C. J. This is an application to compel respondent, who is supervisor of Richland township, to list and assess the following personal property, which was situate as herein set forth at the date of assessment of property generally for the purposes of taxation:

*a*—Between six and seven million feet of round timber, which was cut and piled last winter, on skidways, along a branch of the Detroit, Bay City & Alpena Railroad, and which belonged to N. & B. Mills, of Marysville, Mich.

*b*—200,000 feet of sawed lumber, which was drawn and piled along said railroad track last winter, and capped for storage, and belonged to J. & G. K. Wentworth, of Bay City, Mich.

*c*—50,000 feet of sawed lumber, in same condition, owned by Alva Woods, of East Tawas.

*d*—About 150,000 feet of pine logs cut in the township

of Richland, and piled along said railroad track, and owned
by W. Nesbitt, of Tawas City, Mich.

*e*—About 300,000 feet of hardwood logs piled along said
railroad track, and owned by Austin & Co., of Bay City,
Mich.

*f*—200 telegraph poles piled along said railroad track,
and owned by George Eymer, of Prescott, Mich.

The answer sets forth—

1. That N. & B. Mills had not to exceed 5,000,000 feet
of round timber cut and piled upon skidways along a
branch of said railroad, as alleged; that, at the time of
making the assessment, respondent presented to Barney
Mills, one of said firm, a blank statement to be filled out,
as to the amount of property owned by said firm in said
township; that said Mills filled out such statement, and
subscribed and swore to the same, and therein listed said tim-
ber as being in transit, and informed respondent that he
intended shipping such timber as soon as practicable, and
that it had been assessed to said firm at Marysville; that
the following is a certificate of the supervisor of Port
Huron township, showing such assessment there:

"PORT HURON, April 20, 1892.

"I hereby certify that I have assessed the firm of N. & B.
Mills with 6,000,000 feet of logs in transit, and that said firm has
been assessed as aforesaid for the past four years.

"C. A. BAILEY,
"Supervisor of Pt. Huron Twp."

That respondent relied on the statement of said Barney
Mills that said logs were in transit, and were assessed to
said firm at Marysville.

2. That, as to said 200,000 feet of sawed lumber, a part
of the same was shipped prior to April 11, 1892, and said
J. & G. K. Wentworth informed respondent that said firm
intended shipping said lumber as soon as they could get
cars, and respondent believed that said lumber would be at
once shipped out of said township.

3. That, as to said 50,000 feet of lumber alleged to be-
long to Alva Woods, respondent was informed by one Samp-
son that said lumber belonged to him, and it was assessed
to said Sampson.

4. That, as to the Nesbitt logs, Nesbitt was preparing to
ship them out of the township, when they were attached
by laborers who had performed labor upon them, and thus

detained until March 25, when Nesbitt contracted for their removal, and soon after they were shipped; but whether before or after the second Monday in April, respondent is unable to state.

5. That, as to said telegraph poles, they were assessed to George Eymer.

6. That, as to said hardwood logs, they were cut partly in the township of Logan, and partly in the township of Richland; that they were owned by one Ross, and not by Austin & Co.; that said Ross, on April 1, contracted with certain parties to load said logs upon the cars, but, owing to a claim of trespass for cutting the same, the railroad company refused to ship the same, and they were not shipped until about May 1; and said logs would have been shipped by the second Monday in April, except for such claim.

The tax law of 1869 provided that—

" All personal estate within this State, except in the cases where other provision is made by the third and eighth sections of this act, shall be assessed to the owner in the township where he shall be an inhabitant on the second Monday of May, and all resident real estate to the person occupying it on that day, unless the same shall be given in by some other person for assessment to him."

Under this statute, this Court determined the cases of *Putman v. Township of Fife Lake,* 45 Mich. 125, and *McCoy v. Anderson,* 47 Id. 502. In 1882 the law provided that—

" All goods and chattels situate in some township other than where the owner resides shall be assessed in the town where situate, and not elsewhere, if the owner or person having control thereof hires or occupies a store, mill, place for sale of property, shop, office, mine, farm, storage, manufactory, or warehouse therein, for use in connection with such goods and chattels."

In *Torrent v. Yager,* 52 Mich. 506, and *Monroe v. Greenhoe,* 54 Id. 9 (both decided in 1884), lumber was assessed in a township other than where the owners resided, where it was manufactured under contracts with the owners. It was held that the owners did not own or hire

the place where the lumber was piled, and did not keep
any agent there who had a right to sell it; that, under
an arrangement which contemplated bringing and piling
the lumber for purposes of convenient shipment, the lum-
ber could in no proper sense be regarded as in a place of
storage occupied by the owners for use in connection with
it. In the latter case, Mr. Justice CAMPBELL, speaking for
the Court, says:

"Such an occupancy as the present does not differ in
principle from the deposit of articles on the premises of
carriers for carriage. And the fact that, in the continued
moving and removing process, some of the lumber is not
at once shipped in the order of its piling, can make no
difference in determining the character of the transaction."

In *Manistique Lumbering Co. v. Witter*, 58 Mich. 625;
*Manistique Lumbering Co. v. Griswold*, Id. 634; and *Hood v.
Judkins*, 61 Id. 575,—the tax was assessed under the same
statute.

In 1885, forest products—lumber, logs, timber, lath,
pickets, shingles, posts, cordwood, tan-bark, telegraph and
telephone poles, and railroad ties—were first enumerated
in the statute, and the place for the taxation thereof was
specifically pointed out. What is now the fourth subdi-
vision of section 11 of Act No. 200, Laws of 1891, was
substantially enacted by the Legislature of 1885. It reads,
as follows:

"Personal property of non-residents of the State, and
all forest products owned by residents or non-residents or
estates of deceased persons, shall be assessed to the owner or
to the person having control thereof in the township or ward
where the same may be, except that, where such property is
in transit to some place within the State, it shall be assessed in
such place: *Provided*, all forest products in transit on the
second Monday in April, and thereafter found in the waters
or streams of this State, or on the banks or shores of
any lake, pond, or stream of this State, when the same
is not at the place where it is to be manufactured, shall
be held to have a place of destination at the sorting grounds

of the rafting and driving agents or booming company nearest the mouth of the stream, unless the contrary shall be made to appear by the owner or party having the same in charge: *Provided, further,* that all lumber, logs, timber, lath, pickets, shingles, posts, cordwood, tan-bark, telegraph or telephone poles, or railroad ties that may be piled or left in any yard, railroad reserve, or in any shed, shall not be deemed in transit, but shall be assessed to the owner thereof in the township or ward where the same may be situate at the time provided by law for taking such assessment."

It is quite evident from this history of the legislation of the State, and the decisions of this Court, that the Legislature intended by the statute of 1885 to reach this very class of property, and to avoid the difficulties arising under the old law respecting its assessment.

In *Hill v. Graham,* 72 Mich. 659, the owners had contracted with one Redy to cut and put afloat in the Munoskong river, and run and deliver at its mouth, all of their pine timber. The river passes through the township of Bruce, where the logs were assessed. On the second Monday in April, 1886, the supervisor of Bruce township found a small creek leading into the Monoskong piled full of logs; the pile extending back from the creek on dry land a distance of 100 yards. These logs had been cut during the winter of 1885–86 by Redy, under his contract, and the supervisor estimated the amount at 11,000,000 feet. The creek was frozen over, and the logs were not being run, although preparations were being made to run them when the creek should be in a condition to run them. The court instructed the jury as follows:

"The law also provides that logs, lumber, pickets, telegraph poles, ties, and other forest products, if piled or left in any yard, railroad reserve, shed, or any other place, shall not be deemed in transit, but are to be assessed to the owner in the township where they are found. Therefore, it becomes an important question in this case whether

or not logs were in transit. If they were, they were not liable to taxation in Bruce township, and the plaintiffs are entitled to your verdict. If they were not in transit, they would, under the undisputed evidence, be liable to taxation there.

"When we speak of 'goods in transit,' we mean on the way or passage, while going from one place or person to another, in the course of business or commercial dealings.

"So, if you find that on the second Monday of April, 1886, the plaintiffs were driving the logs, of which the logs in this suit formed a part, towards their destination, or were breaking the rollways and jams for that purpose, or were working upon them in the ordinary way, with a view of driving them towards their destination, or as many of them as the stage of water in the river would permit, then the logs would be in transit, and not liable to assessment in the township of Bruce for that year; and your verdict will be for the plaintiffs.

"But if you find from the evidence that the logs in question were not in the waters or streams in question,— were not actually started on their way or passage down it, but in unbroken piles, awaiting the breaking up of the river, or rise of water, or some future event, before starting,—the mere intent of the owners, unaccompanied by any acts showing their present purpose to drive the logs, would not justify you in regarding the property in transit."

This Court held that the instruction was as favorable to plaintiffs as they had a right to expect.

The Mills logs had been piled and left in a railroad reserve, and should have been listed in that township. The statute expressly says that property so piled and left shall not be deemed in transit, but shall be assessed to the owner thereof in the township or ward where the same may be situate. Lumber and logs are not usually left on railroad premises at such points, except for the very purpose of shipment. It is only as to property in transit that the destination is material, and it will be noticed that it is only as to the destination of such property that the contrary may be made to appear. The statute does not make

the intention of a party who has piled or left lumber in any yard or railroad reserve material. In *Hill v. Graham, supra,* the owners had contracted for the running of the logs, but the Court held that unless the owners were driving the logs towards their destination, or were breaking the rollways and jams for that purpose, or were working upon them in the ordinary way, with a view to driving them towards their destination, then the logs would not be in transit; that the mere intent of the owners, unaccompanied by any acts showing their present purpose to drive the logs, would not justify the jury in regarding the property as in transit. The certificate from the supervisor of Port Huron township does not necessarily refer to this property, and, even though it did, property should be assessed at the place fixed by the statute. The owner has no choice, and may move to correct at the place where illegally listed.

The Wentworth lumber, the Nesbitt logs, and the Austin & Co. logs should also have been listed. The fact that contracts had been made with parties to load the logs or lumber, or that some event had transpired to prevent shipment, or that it was the intention to ship in the near future, should have had no weight with the supervisor. The products had been left there, and had been there for some time, awaiting the convenience of the owners or the facilities for shipment, and they were not in transit, within the meaning of the statute.

As to the Woods lumber and the telegraph poles, the return shows that they had been assessed to the owners by the supervisor in that township.

A *mandamus* must, however, be denied, for the reason that the application comes too late. The placing of the property upon the assessment roll at this late day would deprive the parties of the substantial right of a review of the assessment, either as to the amount, or, if assessed else-

where, as to the legality of that assessment. The writ must therefore be denied, but without costs.

The other Justices concurred.