ELK RAPIDS IRON CO. *v.* TOWNSHIP OF HELENA.    117   211
126   372

SAME *v.* TOWNSHIP OF MILTON.

TAXATION—FOREST PRODUCTS—WHERE ASSESSABLE.

Act No. 206, Pub. Acts 1893, § 14, subd. 8, provides that all forest products shall be assessed in the township where the same may be on the second Monday in April of the year when the assessment is made, except that, where such property is in transit to some place within the State, it shall be assessed at such place. Section 15 provides that forest products in transit on the assessment day, and thereafter found in the waters or streams of the State, or on the banks or shores of any stream, when the same is not at the place where it is to be manufactured, shall be held to have a place of destination at the sort- ing grounds nearest the mouth of the stream, "unless the contrary shall be made to appear:" *Provided*, that products piled or left in any yard, railroad reserve, or shed shall not be deemed in transit. *Held*, that products banked on the shore of a stream, only awaiting suitable condition of the water for transportation to the owner's mill for manufacture, are in transit, and are assessable at the place of manufacture.

Case made from Antrim; Corbett, J.  Submitted April 6, 1898.  Decided May 24, 1898.

*Assumpsit* by the Elk Rapids Iron Company against the townships of Helena and Milton to recover taxes paid under protest.  Judgments were rendered for defendants, and plaintiff assigns error.  Reversed.

Plaintiff is a manufacturing corporation carrying on chemical works, an iron furnace, and a sawmill.  It is located in Elk Rapids, where are its plants, stores, offices, and place of business.  It uses annually a large amount of forest products, which are procured from the neighboring townships.  In these townships are streams and lakes, over which these products are conveyed to its plants at

Elk Rapids. These products have been for many years purchased from settlers and landowners around these waters. They were gotten out mostly in the winter, and transported by teams to suitable banking grounds, approachable by scows and barges. When delivered upon these grounds, they were inspected, measured, and paid for by the plaintiff. The wood was loaded on scows, and the logs, in booms and rafts, were towed to Elk Rapids. This was usually done at the opening of navigation. During the winter of 1893 and 1894 a large amount of wood and logs had been gotten out, and placed upon the usual banking grounds, and during the season of 1894 was taken to Elk Rapids. The supervisors of the defendant townships assessed this property to the plaintiff on the second Monday in April, 1894. At that time the property had been purchased, paid for, delivered to the plaintiff, and was awaiting the opening of navigation for transportation to Elk Rapids. The logs were in rollway piles on the ground on the shore, and the wood, four feet in length, was piled in rows ready for loading on the scows. Plaintiff commenced to move its property as soon as navigation opened,— about May 1st. The supervisors were familiar with the business of the plaintiff, and the manner of transporting said products, and believed that it did honestly intend, in good faith, to transport the same over the waters to Elk Rapids for use in its business, but were advised and believed that under the law they were not in transit, and were therefore subject to taxation in the township where they were situated. Levies were threatened, and plaintiff paid under protest, and instituted these suits to recover the amount so paid. In Milton township, 180,000 feet of logs had remained there a year; and in Helena township, 115,000 feet. It appears, however, that the plaintiff left them there only for the reason that it was unable to transport them during the previous season. The same property was assessed at Elk Rapids, and the taxes thereon paid. The above are the stipulated facts. Judgments were rendered for the defendants.

*Fitch R. Williams*, for appellant.

*Totten & Phelps*, for appellees.

GRANT, C. J. (*after stating the facts*).  The statute provides that all forest products "shall be assessed in the township or ward where the same may be  *  *  *  on the second Monday of April of the year when the assessment is made, except that, where such property is in transit to some place within the State, it shall be assessed in such place."  Act No. 206, Pub. Acts 1893, § 14, subd. 8. Section 15 of the same act is as follows:

"All forest products in transit on the second Monday in April in each year, and thereafter found in the waters or streams of this State, or on the banks or shores of any lake, pond, or stream of this State, when the same is not at the place where it is to be manufactured, shall be held to have a place of destination at the sorting grounds of the rafting and driving agents or booming company nearest the mouth of the stream, unless the contrary shall be made to appear by the owner or party having the same in charge:  *Provided*, that all lumber, logs, timber, lath, pickets, shingles, posts, cordwood, tanbark, telegraph or telephone poles, or railroad ties, that may be piled or left in any yard, railroad reserve, or in any shed, shall not be deemed in transit, but shall be assessed to the person or corporation having control of the yard, railroad reserve, shed, or place of storage where the same may be situated at the time provided by law for taking such assessment."

The sole question is, Were these products in transit at the time of the assessment ?  It is conceded that, from the moment these logs were cut in the woods, they were intended to be transported from there to plaintiff's mill at Elk Rapids for manufacture, and that the only delay contemplated was that caused by the condition of the water.  Reliance is placed mainly upon *Hill* v. *Graham*, 72 Mich. 659.  That decision was rendered in November, 1888, under the act of 1885 ( Act No. 153, § 11, subd. 4). The law of 1885 was amended in 1889 (Act No. 195 ), adding, after the words "streams of this State," these words: "or on the banks or shores of any lake, pond, or

stream of this State, when the same is not at the place where it is to be manufactured." It is fair to presume that the amendment of 1889 was made in view of the decision of *Hill* v. *Graham*. In that case the jury were instructed that if the logs in question were not in the waters or streams, were not actually started on their way, but were in unbroken piles, awaiting the breaking up of the river or rise of water before starting, the mere intent of the owners, unaccompanied by any acts showing their purpose to drive the logs, would not justify the finding that the property was in transit. The jury undoubtedly found, and based their verdict upon the fact, that the logs were simply banked, and were not in the stream. Under the law of 1893, which is the same as that of 1889 and 1891, when forest products are on the banks or shores of any lake, pond, or stream, and not at the place of manufacture, the destination is at the sorting grounds, unless the owners make the contrary to appear. The contrary is conclusively shown in this case. The case of *Maurer* v. *Cliff*, 94 Mich. 194, does not apply, because the products there involved were within a provision of the statute of 1891 identical with the proviso of section 15 of the act of 1893 above quoted. The case is within the rule laid down in *Brooks* v. *Township of Arenac*, 71 Mich. 231; *Pardee* v. *Township of Freesoil*, 74 Mich. 81; *Corning* v. *Township of Masonville*, Id. 177.

The judgments will be reversed, and judgments entered here for the plaintiff, with the costs of both courts.

The other Justices concurred.