## BOARD OF COM'RS OF CUSTER COUNTY v. ANDERSON.

### (Circuit Court of Appeals, Ninth Circuit. April 29, 1895.)

### No. 162.

**1. STATUTES—INTERPRETATION—TAXATION.**

A construction will not be put upon a statute concerning the imposition and collection of taxes which would enable taxpayers, for whom no purpose of exemption is expressed, to escape taxation, if the act is reasonably susceptible of any other construction, whereby a revenue is secured.

**2. SAME—MONTANA STATUTES.**

The act of Montana of September 14, 1887, relating to taxation, which required the assessor to assess all the property, subject to taxation, in his county, provided, in section 14, that the assessor should demand of each taxpayer a list of his taxable property, and, if such list were not furnished, that he should list such person's property himself, according to his best information, and add 20 per cent. to such valuation; and, in section 18, that on the assessment roll he should enter, opposite the name of each taxpayer, "By the assessor," when listed by himself. In 1889 an act was passed (Act March 14, 1889; St. Mont. 1889, p. 219), amending certain sections of the act of 1887, which omitted from section 14 the provisions relative to listing by the assessor and adding a penalty, but left the other provisions, above recited, unchanged. *Held,* that it was not the intention of the legislature to leave the essential function of assessment optional with the taxpayer, and that the assessor had still the right, under the amended act, to assess the property of taxpayers who failed to file lists of their property.

In Error to the Circuit Court of the United States for the District of Montana.

This was an action by the board of county commissioners of Custer county, Mont., against W. J. Anderson, to recover the amount of taxes assessed against him. Defendant demurred to the complaint and the circuit court sustained the demurrer. Plaintiff brings error. Reversed.

J. W. Strevell, C. H. Loud, and T. J. Porter, for plaintiff in error. E. C. Day, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. The decision in this case depends upon the proper construction to be given to the act "to amend an act entitled an act to provide for the levy of taxes and assessment of property, approved September 14th, 1887," approved March 14, 1889 (St. Mont. 1889, p. 219). The act approved September 14, 1887, after providing that the assessor should demand of each taxpayer in his county a list of his taxable property, contained these words:

"And if the said list be not rendered, under oath at the time such demand be made, the assessor shall proceed to list and assess the property of any such taxpayer, according to his best knowledge and information, and shall add twenty per cent. to the value thereof."

In section 14 of the act of 1889, the words quoted are omitted, and there is no direct provision made for the assessment of personal property belonging to individuals, where the taxpayer refuses to

give a list of his property to the assessor upon demand being made therefor. The complaint, among other things, avers that the assessor—

"Duly demanded from defendant a sworn list of his property subject to taxation; * * * that defendant, notwithstanding such demand, wholly refused and neglected to render to said assessor any list of his property * * * at any time or at all; that subsequent to such demand, and by reason of such refusal, the said assessor did make diligent inquiry concerning the property of the said defendant subject to taxation, * * * and did after such inquiry, and by reason of the refusal of the defendant to furnish any property list, himself, as such assessor * * *, list the property of the said defendant * * * for taxation and subject to taxation * * * according to his best judgment and information."

The circuit court sustained a demurrer to the complaint upon the ground that it fails to show that any legal assessment had been made. The logical result of the argument made by defendant, in favor of this ruling, is that it was the intention of the legislature of 1889, by omitting the clause quoted from the act of 1887, to leave the question of the payment of taxes in the state of Montana entirely within the discretion of the individual taxpayers; that, if they wished to avoid the payment of any tax, all they had to do was to refuse to deliver any list of their property to the assessor, and the assessor was then without warrant of law to make any assessment. By a strict and literal interpretation of the provisions of section 14, without any reference to other sections, the act may be subject to this interpretation. Is the act in its entirety reasonably subject to any other construction? It is the duty of the legislature to provide the mode of assessing property for the purposes of taxation. An assessment is usually the most important step to be provided for. Unless an assessment is made, as provided by law, no foundation is laid for the collection of the tax. The officers charged by the law, and clothed with the duty of assessing, levying, and collecting the taxes, in the absence of constitutional power in this respect, derive their authority from the statute.

Ordinarily, the statutory provisions concerning the assessment of property, the levying and collecting of taxes thereon, are so positive and direct as to make it unnecessary for the courts in determining the intent of the legislature—which is always the guiding star and controlling principle of all statutory interpretation—to look beyond the words employed to express it. The general rule is that the legislature must be understood to intend what is plainly expressed; that nothing then remains but to give this intent effect. It is only in cases where the words used are of doubtful import, ambiguous, or susceptible of different constructions that the courts are authorized to look beyond the words of the statute in order to ascertain what was within the contemplation of the legislature at the time the statute was enacted. In such cases courts will seek for the meaning by looking at the occasion and necessity of the law, the object and purpose had in view, the scope and extent of the entire act, etc.

The whole purpose, object, and intent of the act in question is to provide a system of revenue for the state and county govern-

ments. It is not reasonable to believe that any legislature invested with the power, and charged with the duty, to impose taxes upon the citizens of the state or territory, would naturally intend to insert provisions in the statute which would make it totally inoperative, or to leave it subject to the will and voluntary action of each taxpayer whether it should be enforced or not. Such a construction appeals with no favor to the judicial mind, and should not be followed, unless the terms of the statute are such as to imperatively demand it. Before such a condition of affairs should be sanctioned by the courts, the intent of the legislature to authorize it must be clear beyond a reasonable doubt. Nothing, in this regard, can be taken against the state by presumption or inference. There could be no safety to the public interests in the adoption of any other rule. The power of taxation is, as has been often said, an attribute of sovereignty, and is absolutely essential to the existence of every government,—national, state, and municipal. The entire community is directly interested in retaining and preserving it undiminished and unrestrained, and have the right to insist that its abandonment ought not to be presumed in any case wherein the deliberate purpose of the state or legislature to abandon it does not affirmatively appear. In the Delaware Railroad Tax Case, 18 Wall. 206, 226, Mr. Justice Field, speaking for the court, said:

"If the point were not already adjudged, it would admit of grave consideration whether the legislature of a state can surrender this power, * * * any more than it can surrender its police power or its right of eminent domain. But, the point being adjudged, the surrender, when claimed, must be shown by clear, unambiguous language, which will admit of no reasonable construction consistent with the reservation of the power. If a doubt arise as to the intent of the legislature, that doubt must be solved in favor of the state."

Revenue laws are not to be construed from the standpoint of the taxpayer alone, nor of the government alone. Both must be considered. But from either standpoint the statute should never be construed in such a manner as to defeat the right of the government "by any subtle device or ingenious sophism whatsoever." Cooley, Tax'n, 272–274.

It is always a consistent and safe rule, under the circumstances and conditions of the given case, to put such a construction upon the statute as will best answer and subserve the intention which the legislature had in view at the time of its enactment; and whenever this intention can be discovered, by any of the ordinary and recognized rules of interpretation, it should be followed by the courts with reason and discretion, even if such construction may, at times, seem contrary to its letter, and in opposition to the very words of an act. Sedg. St. Const. 195; Potter, Dwar. St. 128, 140; 2 Blackw. Tax Titles, §§ 1220, 1222; Gibson v. Mason, 5 Nev. 285. In harmony with this rule, the courts have held that a construction will not be put upon a statute concerning the imposition and collection of taxes which would enable the taxpayers, for whom no purpose of exemption from liability is expressed, to escape taxation, if the act is reasonably susceptible of any other construction, whereby a revenue is secured. In City of Philadelphia v. Ridge Ave. Passenger Ry.

Co., 102 Pa. St. 190, 196, where there was an ambiguity in the statute, and the court resorted to the reason and spirit of the law, its object and purpose, in order to ascertain the intention of the legislature, the court said:

"The intent of the legislature was without doubt to establish a source of revenue to the city, payable out of the annual dividends of the company, and for that revenue the city was not to be dependent upon the mere generosity of the company. It is an old rule of construction that if one interpretation would lead to absurdity, the other not, we must adopt the latter; so that interpretation which leads to the more complete effect, which the legislature had in view, is preferable to another. When language is elliptical, the necessary words supplied must be such, and so construed, as to have some force, ut res magis valeat. Sedg. St. Const. 196; Nichols v. Halliday, 27 Wis. 406."

In construing both the original and amendatory acts in question, it does not necessarily follow that the legislature, by leaving out the clause authorizing the assessor to list the property, if the taxpayer failed to furnish a list, intended to deprive the assessor of that right or duty. There is not in any of the sections of the act, as amended, any denial of the right of the assessor to perform this duty. The assessor is required by the act to assess all the property, subject to taxation, within his county. It is a rule of construction that when anything is required to be done the usual means may be adopted for performing it. The entire act, as amended, must be considered in order to arrive at the true intent of the legislature. The original act of 1887 contains 60 sections, only 9 of which were changed by the amendatory act of 1889. There were several imperfections, or crudities, in the old act, and an inspection of both acts clearly indicates that at least one of the objects of the legislature in making the amendments was to perfect the statute in this respect. Section 14, which is the real bone of contention, was materially revised. In the original section it was left optional with the taxpayer whether to make a list of his property or to allow the assessor to do so. The amended section is so worded as to make it mandatory upon the taxpayer to make a list of his property, and, non constat, the legislature may have thought that by such change it was unnecessary to leave in the clause omitted. This view is strengthened by reference to other sections of the act which were not amended. Section 18 provides when, and in what manner, the assessor shall make an assessment roll. It requires him to write the words "By the assessor," when the list was made by himself; and the words "Absent," or "Sick," or "Refused to list," or "Refused to swear," or such other words "as will express the cause why the person refused to make the list did not make it, and neglect shall be taken as a refusal." The language of this section is broad enough to make it apply to all cases where the taxpayer has failed to make out a list, and certainly implies that it is the duty of the assessor to make the list if the taxpayer fails or refuses to do so.

It cannot consistently be said that this section only has reference to the provisions of section 6 of the amended act, which relates solely to the assessment of the property of corporations, and provides "that in case the secretary, clerk or other proper officer shall fail, refuse or neglect to furnish the assessor such list under oath, it shall be the

duty of the assessor to list such property and value the same according to his best judgment and information and add twenty per cent. thereto on account of such failure, refusal or neglect." It is reasonable to presume that if it had been the intention of the legislature, in making the amendments, to leave it optional with the private individuals to avoid the payment of any tax by simply refusing to make a list, section 18 would also have been amended so as to make it apply only to cases provided for in section 6, viz. to the assessment of the property of corporations. The reading of the entire act as amended implies, in the absence of any direct provision to the contrary, that it is the duty of the assessor to make the list in the event that the taxpayer fails to do so from any cause. All the property within the county, not exempted by the statute, "is subject to taxation," and "shall be listed and assessed." Sections 3, 4. It is unnecessary to cite other sections. It is well settled that "what is implied in a statute is as much a part of it as what is expressed." U. S. v. Hodson, 10 Wall. 395, 406; Potter, Dwar. St. 145, rule 14. No authorities have been cited which go to the extent claimed by defendant, that the assessor could not make a valid assessment because no property was listed by the taxpayer, and after a somewhat diligent search none have been found. In Kentucky the right of the assessor to list property for taxation is denied by the courts; but the reason for such denial is based upon the ground that the statute of that state makes it the duty of other officers to act in making the assessment in cases where the taxpayer fails to furnish the list. Louisville & N. R. Co. v. Com., 85 Ky. 199, 3 S. W. 139; Clark v. Belknap (Ky.) 13 S. W. 212. But, under the statute of Montana, the right to assess all property situate within his county, subject to taxation, is vested in the assessor. As before stated, it is made the positive duty of the taxpayer to make out the list, and, as was said by the supreme court of California in City and County of San Francisco v. Flood, 64 Cal. 509, 2 Pac. 264: "If he fails to do so, and any loss should result to him in consequence of such failure, his complaints on such score should meet with no favor in a court of justice." It is a self-evident proposition that the defendant cannot take any advantage of his direct violation of the provisions of the statute, and by his own wrong avoid the payment of taxes justly due under the law. It is also evident, from a careful reading of the entire act, that the legislature did not intend that the performance of the taxpayer's duty to the government should be left merely to his willingness or caprice. We are of opinion that the complaint is sufficient to show that a legal assessment of the defendant's property has been made. The demurrer thereto, in so far as it affects that question, should have been overruled. The judgment of the circuit court is reversed, and the cause remanded for further proceedings, in accordance with the views expressed in this opinion.