STATE TRUST CO. v. CHEHALIS COUNTY et al.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1897.)

No. 292.

1. TAXATION—ASSESSMENT—OWNERSHIP—RECORD TITLE.
   In ascertaining the ownership of property for the purposes of taxation, the record title, in the absence of actual knowledge, must control. It is unnecessary for the assessing officer to investigate all matters pertaining to the ownership of the property or the validity of the record, but he has the right to act upon the appearance of title as shown by such record.

2. SAME—PERSONAL PROPERTY—BILL OF SALE—MORTGAGE.
   When a bill of sale of personal property, absolute on its face, and apparently conveying the title to such property to the grantee, has been placed on record, and such property has not been listed by the owner to the taxing officer, such officer, acting under a statute requiring him, in the absence of listing by the owner, to make a return from the best information he can obtain, may properly assess such property to the record owner, if he has no actual knowledge of a different ownership; and the validity of the assessment is not affected by proof that the recorded bill of sale was in fact intended as a mortgage, or that the property actually belonged to another person than the grantee.

SAME—PROPERTY IN TRANSITU.

In ascertaining the ownership, for the purposes of taxation, of property actually within a county, but alleged to be merely in transitu, so as to be exempt from taxation within such county, there must be at least an intention and fixed purpose to remove it within a reasonable time; and an intention to remove it at some future time, depending upon certain contingencies which may or may not happen, is wholly insufficient.

In Error to the Circuit Court of the United States for the Western Division of the District of Washington.

Doolittle & Fogg and C. W. Hodgdon, for plaintiff in error.

J. R. Bridges, for defendants in error Chehalis county and J. C. Lewis.

Ben Sheeks, for defendant in error Book.

Austin E. Griffiths, for defendants in error Wilson and Weatherwax.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This action was brought by the plaintiff in error to recover the value of certain steel rails which it is alleged were wrongfully and unlawfully converted by the defendants in error. The property in question was assessed for taxes in Chehalis county as the property of the plaintiff in error, and was thereafter sold for the nonpayment of the taxes. The defendant Lewis is the treasurer of Chehalis county. The defendants Book, Weatherwax, and Wilson were the purchasers of the property at the tax sale. The court, at the close of the testimony, sustained the motion of defendants to instruct the jury to find a verdict for defendants, by granting a nonsuit.

The record shows that, as the case was presented to the circuit court, the assessment, levy, and sale by the county were virtually conceded to be regular, except upon two points raised by the plaintiff against defendants' motion: (1) That the assessment was not made against the owner of the rails; (2) that the rails were not taxable in Chehalis county. The assessment, levy, and sale were made under the provisions of the statute of Washington of 1893, p. 323 et seq. Under this statute all property, real and personal, is subject to assessment and taxation for state and county purposes on the 1st day of April of each year in which the same shall be listed, unless expressly exempted therefrom. It is made the duty of the owner to list his property and furnish the list to the assessor, and, if he fails to do so, it is the duty of the assessor to ascertain the amount and value of such property, and assess the same at such amount as he believes to be the true value thereof. Section 20 reads as follows:

"The president, secretary or principal accounting officer or agent of any company or association, whether incorporated or unincorporated, except as otherwise provided for in this act, shall make out and deliver to the assessor a sworn statement of its property, setting forth particularly, first, the name and location of the company or association; second, the real property of the company or association, and where situated; third, the nature and value of its personal property. The real and personal property of such company or association shall be assessed the same as other real and personal property. In all cases of failure or refusal of any person, officer, company or association to make such return or statement, it shall be the duty of the assessor to make such return or statement from the best information he can obtain."

There are no provisions in the statute which directly declare that he shall assess the property to the true owner. Section 35 provides that:

"All tools, machinery and material for repairs, and all other personal property of any railroad company, except 'rolling stock,' shall be listed and assessed as personal property in the county wherever the same may be on the first day of April of each year."

The facts elicited at the trial were substantially as follows: The rails in question had been a part of the cargo of the steamer Abercorn, which in 1888 was wrecked at North Beach, within the limits of Chehalis county. They were removed from the wreck late in 1891 or early in 1892, and thereafter remained within said county up to the time of their sale for taxes on June 30, 1894. The underwriters bought the rails after the wreck, and in 1891 sold them to A. M. Cannon and Paul Mohr. On November 15, 1892, Cannon and Mohr sold the same to the Columbia Railway & Navigation Company, a corporation organized under the laws of Washington, with its principal office at Tacoma, Pierce county, and having for its principal object (on paper) the building of a railroad on the north side of the Columbia river, and across the interior of Washington. On November 15, 1892, the Columbia Railway & Navigation Company conveyed the same to the State Trust Company, plaintiff in error, by bill of sale therefor, absolute on its face, which was filed for record and duly recorded in the office of the auditor of Chehalis county on the 15th day of June, 1893, in book 10 of Miscellaneous Records. On November 2, 1893, a second bill of sale was executed by the same parties, in terms substantially the same as the first bill of sale, except that the second one had annexed to it the affidavit of A. M. Cannon, president of the Columbia Railway & Navigation Company, to the effect "that this bill of sale was made in good faith, and without any design to hinder. delay, or defraud creditors." This bill of sale was filed for record and recorded in the office of the auditor of Chehalis county on November 25, 1893, in volume 12, Miscellaneous Records. Mr. Bangs, the president of the State Trust Company, testified that "in November, 1892, the State Trust Company was advised by its counsel at Spokane that either the form of the first bill of sale or of the record rendered the execution, delivery, and recording of a new bill of sale desirable." The testimony on the part of the plaintiff was to the effect that the Columbia Railway & Navigation Company was indebted to the State Trust Company for a loan of $50,000; that a note was given for said amount on November 29, 1892, payable eight months after date; that said bills of sale were executed and delivered as collateral security for the payment of said indebtedness, and were intended as confirming the pledge of the rails to the State Trust Company, "and not as a means of transferring the actual title." The plaintiff offered to show that when the second bill of sale was left in the auditor's office a request was made that it be recorded "in the chattel mortgage records, as it was in fact intended by the parties to operate as a mortgage," which testimony, upon objection, was excluded by the court. With reference to the notice given to Mr. Lewis, the county treasurer

of Chehalis county, concerning the ownership of the property, Mr. Hodgdon, one of the attorneys for the plaintiff, testified as follows:

"I talked with Mr. Lewis several days before the sale took place, and informed him of the ownership by the Columbia Railway & Navigation Company, and that the State Trust Company had simply a mortgage, and on the morning of June 30th [the day of the sale] I gave him an affidavit which had been made and sent to me by Mr. Cannon as to the ownership of those rails."

Mr. Lewis gave his version of the conversation with Mr. Hodgdon as follows:

"I had a conversation with Mr. Hodgdon about the first of June or the last of May in reference to the tax on the rails. * * * I asked him if he was representing the State Trust Company, and he said that he was not, but he was in communication with them, and would notify me whether they would pay the taxes or not."

The following question was then asked by defendants' counsel on cross-examination:

"Q. Mr. Lewis, so far as you know as an officer and as treasurer, who was the owner of these rails in question at the time the tax rolls came into your hands; at the time the levy was made; at the time of the seizure of the property, and the sale of the property?"

To this question plaintiff objected upon the ground that it was incompetent, and the objection was overruled, and the witness answered:

"The State Trust Company of the City of New York."

At the time of the listing of the property for taxation, on April 1, 1893, the State Trust Company was in the possession of the property; was the record owner thereof, by virtue of the first bill of sale, the second not having at that time been executed. Neither Lewis nor any of the county officers had any knowledge as to the ownership otherwise than was obtained from the records.

The following telegram and letters were introduced in evidence:

"New York, 6, 7, 1893.

"To F. D. Arnold, First National Bank, Hoquiam: Take immediate possession of steel rails at So. Aberdeen and Cosmopolis for State Trust Co. of New York (bill of sale executed by Columbia Ry. and Navigation Co. mailed to-day), and draw for expenses.    The State Trust Company, 36 Wall St., N. Y."

"The State Trust Company.

"No. 36 Wall St., New York, June 7, 1893.

"F. D. Arnold, Esq., Pres. First National Bank, Hoquiam, Wash.—Dear Sir: We telegraphed you to-day to take possession of 1,901 tons of steel rails located at South Aberdeen and Cosmopolis for this company. We inclose herewith bill of sale of the Columbia Railway and Navigation Company to us for the above property. Please keep possession for us, and only deliver or allow the rails to be removed on our order. * * * Please give this matter your immediate attention, as expedition is all-important under the circumstances.

"Yours, very truly,    Andrew Mills, Pt."

In a subsequent letter of July 10, 1893, to Mr. Arnold, by the secretary, the company said:

"We are this morning in receipt of your two favors of July 1st and 3rd; the latter containing the notice as to our ownership of the rails. We agree with you that we do not think it is necessary to keep a man all the time watching the rails. * * * We assure you that we appreciate the kind services ren-

dered by you in this connection, and for what you have done you have our thanks. We hope that you will keep yourself advised of any movements in regard to the moving of the rails, or of their in any way being disturbed."

Thereafter the following notice was posted upon the rails:

"Notice.

"Notice is hereby given that these rails, and all rails taken from the Abercorn wreck, are the property of the State Trust Company of New York.

"State Trust Company,
"F. D. Arnold, Agent."

The bill of exceptions shows that:

"In the opening statement of counsel for plaintiff, he said that the rails in question had not been assessed to their owner, the Columbia Railway & Navigation Company, as required by law, but that they had been erroneously assessed, levied upon, and sold by Chehalis county as the property of the State Trust Company, which was not owner, but only a mortgagee thereof; that said assessment, levy, and sale were void because the property had not been assessed to, levied on, and sold as the property of the owner; for the further reason that the same was not assessable by or in Chehalis county. These were the grounds, and the only grounds, upon which counsel, in his opening statement, predicated the invalidity of said assessment, levy, and sale; and these were the only grounds upon which the invalidity of the assessment, levy, and sale was contended for by plaintiff on the argument on the motion for nonsuit, as well as in his opening statement."

It is therefore affirmatively shown, as before stated, that there were only two points urged at the trial against defendants' motion: (1) That the rails were not assessed to, nor sold as the property of, the owner; that the bills of sale executed to the State Trust Company were mortgages only, and that the property in question still belonged to the Columbia Railway & Navigation Company. (2) That the property was not taxable in Chehalis county, because (a) it was in transitu; (b) it, being the property of the Columbia Railway & Navigation Company, a corporation of the state of Washington, with its principal place of business in Pierce county, was not taxable in Chehalis county.

Did the court err in granting a nonsuit? The law is well settled that the owner of property for the purpose of taxation is the person or corporation having the legal title thereto. Tracy v. Reed, 38 Fed. 69, 74; Miner v. Pingree, 110 Mass. 47; Richardson v. City of Boston, 148 Mass. 508, 20 N. E. 166; Augusta Bank v. City of Augusta, 36 Me. 255; Augusti v. Bank, 46 La. Ann. 530, 15 South. 74; Vance v. Corrigan, 78 Mo. 94. The rails in question were not listed by the owner to the assessor as the law required. He was compelled to act upon the best information obtainable. In ascertaining the ownership of property for the purposes of taxation under such circumstances, the record title, in the absence of actual knowledge, must control. It is unnecessary for the assessing officer to investigate all matters pertaining to the ownership of the property or of the validity of the record. He has the right to act upon the appearances of the title to the property as shown by the records. It does not devolve upon him to test the validity of the title deeds or documents in order to ascertain the name of the owner. The authorities upon this subject clearly show that the appearance of the title, as shown by the record, and the evidence, in the present case, were

sufficient to maintain the validity of the assessment. The North Cape, 6 Biss. 505, 515, Fed. Cas. No. 10,316; Finney v. Boyd, 26 Wis. 366, 371; French v. Spalding, 61 N. H. 395, 402; Mason v. Bemiss, 38 La. Ann. 935, 938; Puget Sound Agriculturial Co. v. Pierce Co., 1 Wash. T. 159, 168; Butler v. Stark, 139 Mass. 19, 29 N. E. 213; Jones v. Town of Bridgeport, 36 Conn. 283. As was said by Blodgett, J., in the North Cape, the—

"Officers charged with the assessment and collection of taxes are not required to look into the secret ownership of personal property. They do their duty when they assess the property against the apparent owners as shown by possession or muniment of title."

In Augusti v. Bank, the court, in discussing a similar question, said:

"Titles that are intrinsically null, if permitted to remain unquestioned, may become the basis of an assessment that will result in a valid sale. Any other ruling upon this point would compel the assessor to investigate titles and ascertain as to their conclusive validity. This was never contemplated by the law. The evidence of a prima facie title is the requirement."

Persons who own the property at the time of the assessment are the proper ones upon whom the tax should be imposed, irrespective of any prior or subsequent change of ownership. 25 Am. & Eng. Enc. Law, 121, and authorities there cited.

It is unnecessary to consider the objection urged against the ruling of the court in permitting Lewis to testify that the State Trust Company was the owner of the property, or to the ruling of the court excluding the request to have the second bill of sale recorded in the Book of Chattel Mortgages, for the reason that such rulings, even if erroneous, would not have changed the result. Migeon v. Railway Co., 23 C. C. A. 156, 77 Fed. 249, and authorities there cited; Haley v. Elliott (Colo. Sup.) 38 Pac. 771. The notice given to Lewis by Hodgdon was insufficient to invalidate the assessment. No notice whatever was given to the purchasers of the rails at the tax sale to the effect that the State Trust Company was not the owner of the property. If the assessing officer had the right to act upon the appearances of title as manifested by the conduct of the State Trust Company, and as shown by the records, then it matters not who the real owner was.

The cases cited by plaintiff are so great in number as to render it impracticable to attempt any extended review of them. Many of them have no reference whatever to tax cases. Others relate to street assessments, in which much stricter rules prevail than in the collection of taxes due to the state and county government. Numerous cases are cited where there was a positive statute directing the assessment to be made in the name of the true owner of the property; and in such cases, where it appeared that the name of the true owner could readily have been ascertained by searching the record, or was known to the assessing officer, and the property was assessed to other persons, the assessments have in many instances been declared void.

Other questions have been discussed at great length which have no special application to the facts in this case; for instance, upon

the general principle that parol evidence in certain cases is admissible for the purpose of proving that an absolute bill of sale was given as a chattel mortgage. A treatise is written upon the law of estoppel, and all the authorities upon this subject have been collected and cited in the brief. Every case should be disposed of upon its own merits, with special reference to the questions raised in the court below.

The various authorities cited by plaintiff from the supreme court of Washington are not adverse to the views we have expressed. In Vestal v. Morris, 11 Wash. 452, 39 Pac. 960, the land was assessed in the name of one Burns, while one Bartlett was the owner, and the county officers had knowledge at the time of the assessment that Bartlett was the owner of the land; and the court held that under the statute then in force "the failure to assess the property in the name of the known owner was a substantial failure to comply with the law." In Baer v. Choir, 7 Wash. 631, 634, 32 Pac. 776, and 36 Pac. 286, certain lands were assessed to one Knight, and sold for the payment of the taxes due thereon. The court held that under certain provisions of the statute, which were quoted, it was clear that it was the intention of the law of 1871 that unusual care should be taken in the matter of assessing real estate to the owners thereof. In the course of the opinion the court said:

"Were there nothing in this case but the recital of the deed that the property had been assessed to Knight as owner, the presumption of the regularity of all former proceedings would carry the presumption that the assessment to him had been properly made by the officer. But the record shows that, although Knight had been the owner, he had conveyed by a recorded deed in 1870; that for the years 1873 and 1874, at least, the lots had been assessed to Mrs. Bonnell; and that Mrs. Bonnell did not convey until 1889; and this showing was sufficient to rebut the presumption which the deed raised."

In Voorhies v. Hennessy, 7 Wash. 243, 34 Pac. 931, the court held that an attachment could not be levied upon property held by the debtor as mortgagee under a bill of sale absolute on its face, although the officer may have had no notice of the true relation of the debtor to the property. This is an authority only upon the general point that in a certain class of cases it is permissible to allow parol evidence for the purpose of proving that an absolute bill of sale was given as a chattel mortgage. It is enough to say that such a rule has no application to tax cases, especially under statutes similar to the statute of Washington, and upon the particular facts as shown in this case. The taxing power is an incident to sovereignty, the exercise of which belongs exclusively to the government and attaches to all property which comes within its jurisdiction, and the statutes of a state should never be construed in such a manner as to defeat the right of the government "by any subtle device or ingenious sophism whatsoever." Cooley, Tax'n, 272–274; Board v. Anderson, 15 C. C. A. 471, 68 Fed. 341.

In Waddingham v. Dickson, 17 Colo. 223, 29 Pac. 177, the court said:

"The payment of taxes is a duty which property holders owe to the government. If they neglect this duty, they have no right to expect relief from the courts on account of merely technical errors on the part of the public officers, where no substantial right has been lost or impaired."

This was said in a case involving the sale of real estate for taxes.

"Certainly a more stringent rule is not required in case of a tax sale of personal property. Meritorious objections affecting substantial rights, when properly made to appear, should always be heeded, but mere hypertechnical objections should not be countenanced in the administration of justice. Such is the trend of modern legislation, and such should be the aim of judicial decisions." Haley v. Elliott (Colo. Sup.) 38 Pac. 771, 773.

The contention of plaintiff's counsel, as set forth in his brief, that:

"These rails had been purchased by the Columbia Railway & Navigation Company, with which to construct its railway around The Dalles, and they were en route to their point of destination; the transit having begun by taking the rails from a ship stranded on the Pacific coast, and transporting them, at a cost of more than $2,000, across the land to Gray's Harbor, thence across the harbor, and up the Chehalis river to the railroad, by which they were to be ultimately carried another stage on their way to The Dalles. This is fully proven, and not disputed. The cause of their delay at Cosmopolis does not appear, but so long as it remained the owner's intent to carry them forward on a transit already commenced, in legal contemplation, so long as they continue to be in transitu. This intent being once shown, it is presumed to continue until the contrary is made to appear,"

—cannot be sustained. The rails were originally shipped for the purpose of building a railroad outside of Chehalis county. The wrecking of the cargo of the Abercorn in 1888 ended their voyage. They were towed from the wreck late in 1891 or early in 1892 to Cosmopolis and South Aberdeen, in Chehalis county, and there remained within the limits of the county until the sale for taxes. The bills of sale of the rails were recorded in that county. A portion of the rails was sold by the plaintiff in error to different parties in 1894, and the proceeds applied to the reduction of the loan made by it to the railway company. In June, 1893, information reached the State Trust Company that creditors of A. M. Cannon, of Spokane, were threatening to attach the rails under claim that Mr. Cannon had an interest in them. Mr. Mohr was consulted, and it was agreed that in order to protect the interest of the railway company and State Trust Company, and prevent removal of the rails by outside parties, Mr. F. D. Arnold, then the president of the First National Bank of Hoquiam, should be asked to take charge of the rails and see that they were not removed. A request to that effect was sent to Mr. Arnold, requesting him not to permit the rails to be removed. He put a watchman in charge. This was before the second bill of sale was recorded. The property was not in transitu. It had not been started upon its journey to any other place. In brief, there was nothing in the conduct of the parties in possession of the rails, or any one else, intimating any intention whatever to remove the same or any part thereof from Chehalis county. From the time the rails were landed from the wreck they were in such a situation as to make them a part of the property within Chehalis county, and it was the duty of the assessing officer of said county to assess the rails therein. In order to constitute property in transitu, there must be at least an intention and fixed purpose to remove it within a reasonable time. An intention to remove the rails at some future time, depending upon certain contingencies which might or might not happen, is wholly insufficient. C. N. Nelson Lumber Co. v. Town

79 F.—19

of Loraine, 22 Fed. 54; Hill v. Graham, 72 Mich. 659, 667, 40 N. W. 779; Carrier v. Gordon, 21 Ohio St. 605, 609; Winnipiseogee Paper Co. v. Town of Northfield (N. H.) 29 Atl. 453. In Carrier v. Gordon the court said:

"To say that the simple purchase of the property with an intention to remove it would relieve it from liability to taxation would be to make its liability depend upon the mere intention of the owner, and subject to change as often as the owner changed his intention. There would be no safety or certainty in such a rule. The safer and better rule is the one indicated,—to consider the property actually in transit as belonging to the place of its destination, and property not in transit as property in the place of its situs, without regard to the intention of the owner, or his residence in or out of the state."

See, also, Cooley, Tax'n, 98, and authorities there cited; State v. Dalrymple (N. J. Sup.) 28 Atl. 671; Chicago, B. & Q. R. Co. v. Hitchcock Co. (Neb.) 59 N. W. 358; State v. William Deering & Co. (Minn.) 57 N. W. 313.

The court did not err in granting a nonsuit. The judgment of the circuit court is affirmed, with costs.