### McRAE v. BOWERS DREDGING CO.

(Circuit Court, D. Washington, W. D. November 23, 1898.)

**1. TAXATION—SITUS OF PROPERTY—DREDGES.**

Dredges, having no propelling power, and not designated for use in the carrying trade, nor entitled to enrollment and registry, though employed to do work intended to aid navigation and commerce, and although they are vessels subject to maritime liens, are not instruments of interstate or foreign commerce, and may be subjected to taxation in a state other than that of the residence of their owners, when kept and employed in such state without an intention to remove them therefrom at any definite time; and such vessels are taxable in the state of Washington, under the last clause of section 1666, 1 Ballinger's Ann. Codes & St., providing that "all boats and small craft not required to be registered must be assessed in the county where the same are kept."

**2. SAME—COLLECTION OF TAX AGAINST INSOLVENT CORPORATION.**

A tax collector cannot distrain property of an insolvent corporation in the hands of a receiver of a court of equity which has taken charge of the insolvent estate for distribution, but the claim for taxes must be proved like other claims, and will be allowed and paid as a preferential debt.

Hearing on petition of the receiver to enjoin proceedings for the collection of taxes on property of the defendant, an insolvent corporation.

T. D. Powell, for receiver.

Walter S. Fulton, for King county.

HANFORD, District Judge. This case has been heard upon the petition filed by the receiver of the Bowers Dredging Company, pray-

ing for a perpetual injunction against the treasurer of King county, to restrain him from taking proceedings to collect taxes for the years 1896 and 1897, assessed and levied against the Bowers Dredging Company, as owner of certain personal property, consisting of the dredges or vessels called the "Anaconda" and the "Python," with their equipments, and a steam tugboat, which vessels were at the time of assessing for taxes in said years employed in executing a large contract in the harbor of the city of Seattle, in King county, which would, in the ordinary course of such work, require several years for its completion. The argument and contention on the part of the receiver are that the Bowers Dredging Company is an Illinois corporation, and therefore subject to be taxed for and on account of its personal and movable property only in the state of Illinois; that this court has decided that said dredges are vessels to which maritime and statutory liens may attach, and that they are subject to process in rem in suits within the jurisdiction of a court of admiralty; that they were designed to be navigated from place to place, wherever required for use in dredging harbors and waterways, and doing similar work in aid of commerce and navigation, and therefore have no situs other than their home port, or the place of residence of their owner.

At the outset I wish to make it clear that the ruling of this court sustaining the claims of employés and other creditors to preferential rights by reason of liens upon the dredges falls far short of placing the dredges in the class of ships or vessels intended for service as common carriers, and subject to the laws of the United States relating to inspection, registration, enrollment, and navigation of vessels employed in commerce. The decision of the court (McRae v. Dredging Co., 86 Fed. 344), rests upon the proposition that canal boats, barges, dredges, and various other floating structures without masts, sails, propelling machinery, or steering apparatus, but designed to carry burdens afloat, and to be employed in aid of commerce and navigation, are vessels to which maritime and statutory liens may become attached, and that they are subject to the process of courts of admiralty for the enforcement of such liens, notwithstanding the lack of rigging and appliances essential to make an independent, seagoing vessel entitled to be registered or enrolled. The difference between registered, enrolled, and licensed vessels and any nondescript craft not entitled to be registered, enrolled, or licensed is important, for the reason that the revenue law of this state plainly recognizes a difference, classifies vessels with reference to it, and provides a different rule for the assessment and taxation of registered, enrolled, and licensed vessels from the rule applicable to vessels not entitled to be registered, enrolled, or licensed. Section 1666, 1 Ballinger's Ann. Codes & St., reads as follows:

"Sec. 1666. The personal property of express, transportation and stage companies shall be listed and assessed in the county where the same is usually kept. All vessels of every class which are by law required to be registered, licensed or enrolled, must be assessed and the tax thereon paid only in the county where the owner, or managing owner or agent thereof resides: provided, that such interest shall be taxed but once. Vessels registered, licensed or enrolled out of, and plying in whole or in part in, the waters of this state, the owners, managing owners or agents of which reside in this state,

must be assessed in this state, and in the county in which the owners, managing owners or agents reside, to the value of the respective share or shares owned by said person or persons. All boats and small craft not required to be registered must be assessed in the county where the same are kept."

As to the first class, the law is that only the interests of resident "owners, managing owners or agents" shall be taxed, and that only in the counties within which such owners, managing owners, or agents reside. The intent is manifest to exempt from taxation registered, enrolled, and licensed vessels owned wholly by nonresidents, and also the partial interests owned by nonresidents in vessels which are partly owned by citizens. But these dredges belong to another class, which, by the last clause of the section, is made subject to taxation in the county where kept. Is there any rule of law or reason which requires the court to hold that this statute is not applicable to vessels of this class, when owned by a citizen or corporation of another state? The legal fiction that a man's personal property is deemed to be where the owner is, does not control; for it is well settled that bands of cattle, stocks of merchandise, and all such movable property, may be taxed in the state in which it is kept, although the owner resides elsewhere. Hoyt v. Commissioners, 23 N. Y. 224, and cases cited. The rule that the property of nonresidents cannot be taxed while in transit is not applicable here; for it has been decided by the United States circuit court of appeals for the Ninth circuit, in the case of State Trust Co. v. Chehalis Co., 24 C. C. A. 584, 79 Fed. 282, that, to be exempt under that rule, property must be actually in transit, or "there must be at least an intention and fixed purpose to remove it within a reasonable time." A purpose to remove it at any time in the future when it may suit the owner's convenience is not sufficient.

Only one other ground of exemption remains to be considered. The supreme court has held in Hayes v. Steamship Co., 17 How. 596, and in Morgan v. Parham, 16 Wall. 471, that vessels engaged in interstate commerce are taxable only at their home ports, and that other states, at whose ports such vessels call to discharge or receive freight or passengers, either regularly or casually, have no dominion over them to tax them. Upon this last proposition and these cases the argument in behalf of the receiver mainly rests. In both cases stress was laid upon the facts that the vessels were registered and were ocean-going ships, employed in interstate commerce. The pith of the decisions is found in the last sentence of the opinion by Mr. Justice Hunt in Morgan v. Parham, in which he said that the taxation of vessels so employed "is an interference with the commerce of the country not permitted to the states." It is my opinion that these dredges, although employed to do work intended to aid navigation and commerce, are not instruments of interstate or foreign commerce; and for that reason the two cases referred to are not in point, and do not sustain the argument that the statute of this state which subjects this class of property to taxation in the county where kept is an attempted exercise of power by the state which the federal constitution forbids. This case bears a much closer analogy to Adams Exp. Co. v. Ohio State Auditor, 165 U. S. 194–255, 17 Sup. Ct. 305, in

which the supreme court affirmed the constitutionality of the law of Ohio providing for the taxation of telegraph, telephone, and express companies doing business in that state. In the opinion of the court, by Chief Justice Fuller, a line of supreme court decisions is cited, all holding that the property of railroad, telegraph, and sleeping-car companies in the several states through which their lines or business extend might be valued as a unit for the purposes of taxation, and that a proportion of the whole, fairly and properly ascertained, might be taxed by each particular state in which the corporation has property or does business. If this decision does not overrule Hayes v. Steamship Co. and Morgan v. Parham, it at least draws a plain distinction between vessels afloat and having no other situs than their home ports, and property which must be stationary or be kept at one place when in use, and it is therefore of controlling authority in this case.

The steam tugboat which was assessed as property of the Bowers Dredging Company was not owned by the company, and the tax lien upon it has been foreclosed by a sale of the boat under admiralty process. Therefore the receiver cannot lawfully pay that tax out of any assets in his hands. The tax collector cannot distrain or seize any property of the insolvent corporation while it is in the receiver's custody, and so the injunction prayed for will be granted; but the order to be entered will direct the receiver to pay the amount of taxes levied upon the dredges as a preferential debt, in conformity to the rule that, when a court of equity takes the entire estate of an insolvent into its custody, it will marshal the assets, determine the priorities, and distribute the fund to the creditors or others whose rights have been established.