**STIEFF et al. v. TAIT, Collector of Internal Revenue.**

District Court, D. Maryland. April 19, 1928.

No. 3120.

1. Internal revenue ⬤⟹7(4)—Gain from sale of real estate under contract with small down payment held taxable as of year transfer was completed and substantial payment made (Revenue Act 1918, § 210 [Comp. St. § 6336⅛e]; Internal Revenue Regulations 45, arts. 22, 52).

Gain arising from sale of real estate under contract on which approximately 2½ per cent. was paid at time of execution, with a substantial payment at date of conveyance the following year, *held* taxable under Revenue Act 1918, § 210 (Comp. St. § 6336⅛e), as of the year in which the transfer was completed, particularly in view of fact that taxpayer's books were kept on a cash receipts and disbursements basis, and not on an accrual basis; Internal Revenue Regulations 45, arts. 22, 52, recognizing distinct methods of bookkeeping, and requiring payment of tax during year in which gross income was received, unless included when they accrue in accordance with approved method of accounting.

2. Internal revenue ⬤⟹22—Regulations of Commissioner of Internal Revenue do not have force of judicial determination.

Regulations of the Commissioner of Internal Revenue, constituting merely interpretation of law by an administrative officer, are of no more than persuasive authority, and do not have force of judicial determination.

3. Vendor and purchaser ⬤⟹54—Generally, vendor, after contract of sale of real estate, holds same in trust for vendee, and latter becomes trustee of purchase money.

Generally, vendor, after execution of contract of sale of real estate, holds the same in trust for vendee, and the latter becomes trustee of the purchase money for the vendor.

4. Taxation ⬤⟹321—Ordinarily, property is taxable to vendor, if vendee has not gone into possession under executory contract.

Ordinarily, property is taxable to vendor, if vendee has not gone into possession under an executory contract, though time from which purchaser is deemed owner for purposes of taxation may be dependent on terms of particular tax statute.

5. Taxation ⬤⟹79—One having legal title is generally owner for purpose of taxation.

Generally, owner of property for the purpose of taxation is the one having legal title thereto.

At Law. Action by Gideon N. Stieff and others, executors under the will of Charles C. Stieff, deceased, against Galen L. Tait, Collector of Internal Revenue. Judgment for defendant.

Venable, Baetjer & Howard and Joseph France, all of Baltimore, Md., for plaintiffs.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge. The question for determination in this proceeding is whether the gain arising from a sale of real estate is taxable under the Revenue Act of 1918 (40 Stat. 1057) as of the year in which the contract of sale was made, or as of the year in which the transfer was completed, only a small portion of the purchase price being paid at the time the contract was made, a substantial payment being made at the date of conveyance and the balance of the purchase price being then secured by mortgage.

The facts which give rise to the present controversy are as follows: On November 11, 1919, the taxpayer entered into a written contract for the sale of certain real estate for $100,000 pursuant to the terms of which $2,-500 was paid to him in cash on the signing of the contract, the balance payable on April 11, 1920, the date of conveyance, in the amount of $47,500 in cash and $50,000 by purchase-money mortgage, payable in two installments of $25,000 each in three and five years, respectively, from the date of the mortgage. The contract was carried out in accordance with its provisions, and, as a result, the taxpayer realized a gain of $58,922.05. In his individual income tax return for the calendar year 1919 he included this gain, setting it off against certain losses that he had incurred. Therefore, in his return for the calendar year 1920, he did not include it. On May 26, 1923, the taxpayer died. On March 26, 1925, the Commissioner of Internal Revenue notified the plaintiffs, the executors of the estate of the deceased, that the aforesaid gain should have been reported in his return for the year 1920 instead of that for 1919, and that a deficiency in the amount of $29,814.93 for the year 1920 had been determined against the taxpayer. In due course, the plaintiffs appealed from this determination of the Commissioner of Internal Revenue to the Board of Tax Appeals, which Board, on October 30, 1925, rendered its decision, sustaining the Commissioner. Appeal of Gideon N. Stieff et al., Estate of Charles C. Stieff, Deceased, 2 B. T. A. 1109. Thereupon the aforementioned deficiency was assessed against the Stieff estate for the year 1920. It was paid by the plaintiffs under protest, and claim for refund thereof duly filed, which claim being rejected, the plaintiffs brought the present suit for recovery of the amount so paid.

[1] The Revenue Act of 1918 (40 Stat. 1057) governs in this case. Section 210 of this act (Comp St. § 6336⅛e) imposes a tax upon the "net income" of every individual. In section 212(a), being Comp St. § 6336⅛f (a), such net income is defined as "gross income as defined in section 213" (Comp. St. § 6336⅛ff), less allowable deductions. Section 213 thus defines gross income:

"That for the purposes of this title (except as otherwise provided in section 233 [Comp. St. § 6336⅛p]) the term 'gross income'—(a) Includes gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property."

There is no question that the profit realized by Mr. Stieff is to be regarded as taxable income. The sole question is as of what year is it taxable. In short, is it taxable as of the time when actually received, or may it be considered as having been received at the time when equitable ownership in the property out of which the gain was realized passed from the taxpayer to the purchaser?

It is important to note that Mr. Stieff's books were kept on a cash receipts and disbursements basis, and not on an accrual basis. That is, no receipts were entered until actually paid in cash or its equivalent; and disbursements, likewise, were only entered when actually paid out. The regulations of the Commissioner of Internal Revenue recognize these two distinct methods of bookkeeping, and, although in 1919 and 1920 there appear to have been no specific rulings issued by the Commissioner on this question, in 1921 there were such rulings, construing the provisions of the law as follows:

Regulations 45, article 22. "Computation of Net Income.—Net income must be computed with respect to a fixed period. Usually that period is twelve months and is known as the taxable year. Items of income and of expenditures which as gross income and deductions are elements in the computation of net income need not be in the form of cash. It is sufficient that such items, if otherwise properly included in the computation, can be valued in terms of money. The time as of which any item of gross income or any deduction is to be accounted for must be determined in the light of the fundamental rule that the computation shall be made in such a manner as clearly reflects the taxpayer's income. If the method of accounting regularly employed by him in keeping his books clearly reflects his income, it is to be followed with respect to the time as of which items of gross income and deductions are to be accounted for. See article 52. If the taxpayer does not regularly employ a method of accounting which clearly reflects his income, the com-

putation shall be made in such manner as in the opinion of the Commissioner clearly reflects it."

Article 52. "When Included in Gross Income.—Gains, profits and income are to be included in the gross income for the taxable year in which they are *received* by the taxpayer, unless they are included when they accrue to him in accordance with the approved method of accounting followed by him." (Italics inserted.)

[2] Of course, the aforegoing regulations are of no more than persuasive authority, especially since they were promulgated subsequent to the date of sale here involved, and also because they are merely the interpretation of the law by an administrative officer, and do not have the force of judicial determination. It is to be noted, however, that the Commissioner of Internal Revenue, in interpreting the law, has ruled that the time when income shall be taxable is to be governed by the method of accounting adopted by the taxpayer, and that, if the accrual method is not adopted, then gains such as those involved in the present case "are to be included in the gross income for the taxable year in which they are *received* by the taxpayer." Since the taxpayer in the present case kept his books on a cash receipts and disbursements basis, and not on an accrual basis, the court believes that there is no sound reason for saying that the test in the present case is not when the income was actually received; for to argue otherwise is to confuse the question of when a gain is realized for taxation purposes, with the totally different equitable doctrine of specific performance which is not conclusive in matters of taxation.

[3] What we must here determine is the exact time when a substitution of assets has actually taken place, as required by the agreement of the parties. It is, of course, true that, because of the right of specific performance, courts generally hold that, from the execution of a contract for the sale of real estate, the vendor's interest constitutes personalty, and is distributable among his next of kin; that, conversely, the vendee's interest constitutes realty and descends to his heirs. Citation of cases governing this principle would be superfluous. Further, it is conceded that in most jurisdictions, including Maryland, the risk of loss during the period between the execution of the contract and the time set for its performance is placed upon the owner of the property, and that the vendee is considered as the owner. Conversely, the vendee is entitled to any increment in value. Skinner v. Houghton, 92 Md. 68, 48 A. 85, 84 Am.

St. Rep. 485; Royal Insurance Co. v. Drury, 150 Md. 211, 132 A. 635, 45 A. L. R. 582; Payne v. Meller, 1801, 6 Ves. Jr., 349; 27 L. R. A. (N. S.) 233. In short, the law, generally, is that, from the execution of a contract of sale of real estate, the vendor holds the same in trust for the vendee, and the latter becomes a trustee of the purchase money for the vendor. But this principle, fundamental as it is, does not determine the point here in issue, because an action in 1919 for specific performance would not have then succeeded and put the vendee in the present case in possession, since he was not then, under the contract of sale, entitled to such possession, nor was any negotiable instrument or other security executed or delivered during that year.

[4, 5] The right to ownership or possession is not to be confused with a *burden upon* ownership or possession. The thing to be burdened must first be acquired. When a purchaser of real estate is to be deemed the owner for the purposes of taxation may be dependent upon the terms of the particular tax statute. Ordinarily, the property is taxable to the vendor if the vendee has not gone into possession under an executory contract. Certainly the law is generally well settled that the owner of property for the purpose of taxation is the one having legal title thereto. See Cooley on Taxation (4th Ed.) § 603; State Trust Co. v. Chehalis County (C. C. A.) 79 F. 282. But the question here is not one of taxation of the vendee's or the vendor's interest, legal or equitable, in the real estate or in its purchase price, but simply in the profit *"derived"* from its sale. To derive, means to obtain. So, even if we apply the equitable doctrine of ownership, we still cannot say that the vendor has *obtained* any profit, because what he has is the *right to obtain* the purchase money from the vendee who holds it in trust for him. Therefore the court is not impressed with the argument that we should in this case, as in cases of equitable ownership, adopt the view that the parties must have intended to agree that a substitution of assets shall be considered as having taken place prior to the time when it actually did take place. The possession of the vendee was not accelerated, nor does it appear that the existing leases were assumed by the vendee in advance of taking title.

The Treasury Department has declined to adopt the equitable doctrine either with respect to installment transactions, unless the initial payment equals one-fourth of the total purchase price, or with respect to deferred payment sales not on the installment plan (and the present sale is of this class), unless

(as is not the case here) there is a substantial initial payment of not less than one-fourth of the total purchase price, plus security for the deferred payments. Here the initial payment is only 2½%, with *no* contemporaneous security for deferred payments. Further, the Department in defining when income, generally, not reduced to possession, although credited to the account of or set apart for a taxpayer, is taxable, has declared it may only be taxed when credited to him without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made. See Regulations 45, articles 44–46, inclusive.

The Board of Tax Appeals, in its decision in the present case, said (page 1111):

"The taxpayer was on the cash basis and that disposes of the matter. If he had been on an accrual basis, the decisions of the Maryland court to which we were referred might have some application. But the fact that title, legal or equitable, passed to the purchaser when the contract was executed in 1919, cannot affect the tax liability in this appeal, since the taxpayer did not receive the purchase price as a closed transaction until 1920."

For a discussion of the two distinct methods by which income may be reflected by the taxpayer's books, see U. S. v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347.

Plaintiffs rely primarily upon the case of Davidson & Case Lumber Co. v. Motter, 14 F.(2d) 137, a recent decision by the District Court of Kansas. There it was held under a contract quite similar to the one now before this court that for the purposes of the Revenue Act of 1918, the gain must be considered to have been realized at the time the contract of sale was made, the court stating (page 140 and 141):

"However, the dominion, control, burdens, and benefits of the property were passed to the purchasers in the year 1919 at the time the contract of sale was made absolute. * * * I therefore find as a fact the sale of the real estate in this case, while not perfected by conveyance and full payment of the purchase price until June, 1920, was made in the year 1919. * * *"

From a careful reading of this decision, it would appear that there are probably at least two features that distinguish it from the present case: (1) That the taxpayer's books were kept on an accrual basis and not on a cash basis; and (2) it being inconvenient for the vendor (the taxpayer) to vacate the premises in favor of the vendee prior to the time when the contract was to be consummated, he agreed to pay one-half of the taxes for the year 1920 in consideration of being permitted to remain on the premises, whereas, in the present case, taxes and other direct charges on the property were specified to be paid by the vendor up to the date of the transfer. If we assume that the aforegoing points of difference are not material, then the decision in the Davidson Case would appear to be contrary to the language and intent of the Revenue Act. It was not appealed.

We are not without certain analogies which very strongly tend to confirm the result which is here reached. For example, it has been held that the date of payment, and not of the declaration of a dividend, is the date of distribution for income tax purposes under the Revenue Act of 1916 (39 Stat. 756), as amended in 1917 (40 Stat. 300). The Supreme Court said, in Edwards v. Douglas, 269 U. S. 204, 211, at 211, 46 S. Ct. 85, 87 (70 L. Ed. 235):

"Ordinarily, an income tax is laid upon all taxable income actually received during the tax-year and the tax is payable at the tax-rate of the year in which it is received, although none of the income may have been earned by the taxpayer during that year, or, where the income consists of dividends, although the corporation may not have earned in that year any part of the profits of which the dividend is a distribution."

And again, in the more recent case of Mason v. Routzahn, 275 U. S. 175, 48 S. Ct. 50, 72 L. Ed. ——, the court said:

"We see no good reason for disturbing the long-settled practice of the Treasury Department. Its contemporary interpretation is consistent with the language of the act; and its practice was, in substance, embodied in the Revenue Act of 1918, February 24, 1919, c. 18, § 201 (e), 40 Stat. 1057, 1060 (Comp. St. § 6336⅛b[a]). We conclude that the Circuit Court of Appeals placed an erroneous construction on § 31 (b) [Comp. St. § 6336z(b)].

"Since two of the dividends paid in 1917 were declared in 1916, it becomes necessary for us to consider whether these also are to be deemed distributions made in 1917, as it is only to such that the section applies. It declares that the dividend is income of the shareholders in the year in which it is 'received.' We think it clear that, for this purpose, the date of payment, not the date of the declaration of the dividend, is the date of distribution; and, as all the dividends here in question were paid in 1917, the provision as to the rate is applicable to all."

See, also, United States v. Phillips (C.

C. A.) 24 F.(2d) 195; Park v. Gilligan (D. C.) 293 F. 129.

To the same effect are numerous decisions construing the Income Tax Act of 1913 (38 Stat. 114) and the Corporation Tax Act of 1909 (36 Stat. 11). See Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297; United States v. Christine Oil & Gas Co. (D. C.) 269 F. 458; Mutual Benefit Life Insurance Co. v. Herold (D. C.) 198 F. 199, 214. Although the court in these cases was aided by the fact that the word "received" was employed in the earlier statutes in describing what income was taxable, nevertheless, the same intent is clearly implied in that part of the later enactment with which we are here concerned.

The court has been referred to numerous decisions of the Board of Tax Appeals as authority for arriving at a different conclusion from the one here reached, but the court considers it unnecessary, in view of what has already been said, to give consideration to these decisions, other than to point out that most, if not all, of them would seem to embody facts which make them clearly distinguishable, that is to say, security, in the form of promissory notes or vendors' liens, was given.

The case has been heard by the court sitting as a jury. Therefore, in view of the conclusions as above which the court has reached, the prayer of defendant to rule that there is no legally sufficient evidence to entitle the plaintiff to recover is granted, and the corresponding prayer of the plaintiff to rule, as a matter of law, that the undisputed evidence in the case shows that the sale was made on November 11, 1919, and that the profit from said sale should be included in Mr. Stieff's income tax return for the year 1919, is refused. Judgment will accordingly be entered for the defendant.