AMERICAN LAND & INVESTMENT CO. v.
COMMISSIONER OF INTERNAL
REVENUE.

No. 2892.

Circuit Court of Appeals, Fourth Circuit.
April 28, 1930.

Clement F. Haynsworth, of Greenville, S. C. (Haynsworth & Haynsworth, of Greenville, S. C., on the brief), for petitioner.

Andrew D. Sharpe, Sp. Asst. to Atty. Gen. (Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John McC. Hudson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief) for respondent.

Before WADDILL and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

GLENN, District Judge.

This is a petition to review the decision of the United States Board of Tax Appeals. The only previous opinion in the case is that of the Board reported in 14 B. T. A. 615. The matter was heard by the Board on an agreed stipulation of facts. This agreed stipulation of facts had been prepared by an accountant, and it fails to show the exact nature of a contract covering the sale of land out of which the income involved came. The transaction out of which the tax grew is recited as follows:

"That there is no contention as to any item of income or deduction in 1921 except the profit from sale of certain real estate.

"That on July 20th, 1920, Richard A. Hester entered into an agreement in writing with T. R. O'Dell for the sale of 379 acres of land, with buildings in Pickens County, South Carolina. That this agreement is duly recorded in Pickens County, South Carolina. That the total consideration for the land and buildings was to be One hundred thousand Dollars ($100,000.00).

"That under the terms of the agreement there was $10,000.00 paid to Richard A. Hester on July 20th, 1920, and $40,000.00 on January 1st, 1921. That the agreement provided for payment of $10,000 July 20th 1920, $40,000.00 January 1st, 1921, and the balance in five equal annual payments of $10,000.00 each, the unpaid balance of $50,-000.00 January 1st, 1921, to be secured by a mortgage of the premises, deed having been made by Richard A. Hester to T. R. O'Dell January 1st, 1921, and recorded in Pickens County, South Carolina in accordance with the sales agreement."

The actual contract seems never to have been brought to the attention of the Board and the record before us refers to it variously. It is called in one place "an agreement," in another a contract "of sale," but in most places, we find that the phrase "contract for the sale" is used. It is unfortunate that the actual contract is not set out, so as to enable us to determine more accurately the one question involved in this appeal; namely, when did "the sale" take place, within the meaning of the word "sale" as used in the Revenue Acts and the Treasury Regulations adopted pursuant to the Revenue Act of 1926? The Commissioner had determined that "the sale" took place January 1, 1921, when the deed conveying the prem-

ises was delivered. The Board of Tax Appeals sustained the Commissioner and held that the evidence failed to show facts which would cause it to rule that the sale had taken place in 1920. The only question presented by this appeal is whether or not there is any error of law in the Board's decision.

The pertinent facts other than those outlined above can be recited in a few words. Hester, who made this contract for the sale of the plantation, died in 1924, and the American Land & Investment Company, a South Carolina corporation, is the duly qualified and acting executor of his estate. Hester, in his return for the calendar year 1921, returned the profits from the sale on an installment basis. The Commissioner thereupon determined a deficiency in the income taxes of Hester for the year 1921. The Commissioner's findings, sustained by the Board, are based entirely upon the single proposition that, as a matter of fact and of law, the sale took place on January 1, 1921, when the deed was delivered. If the Commissioner and Board were correct in this finding, then it follows with all the certainty of formal logic that their decision must be affirmed.

The pertinent provisions of the Revenue Act of 1926, c. 27, 44 Stat. 9, 23, 130, are sections 212 and 1208 (26 USCA §§ 953, 953a). Pertinent provisions of the Treasury Regulations 69 are found in article 44 thereof, which deals with the sale of real property involving deferred payments. Having decided that the sale took place in 1921, the year in which the $40,000 payment was received, the Commissioner and Board necessarily decided that this sale was within the terms of subsection 2 of article 44, and was a sale described as follows: "Deferred-payment sales not on the installment plan, that is, sales in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made exceed one-fourth of the purchase price."

The appellant's chief contention is that by reason of the South Carolina law governing contracts "for the sale of land," the Board should have held that "the sale" took place in July, 1920, and therefore the taxpayer had the option of treating the sale as being one on an installment basis, and that, by returning the income as he did, he was exercising this option. This would have put the sale within the terms of subsection one (1) of article 44 as being a sale described as follows: "Sales of property on the installment plan, that is, sales in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made do not exceed one-fourth of the purchase price."

We start with the well-established proposition that the findings of the Board are presumptively correct. See Brooks v. Commissioner (C. C. A.) 35 F.(2d) 178, and cases there cited. Furthermore, the presumption is that the Commissioner and Board of Tax Appeals have acted upon knowledge of the material facts involved. See, also, Brooks v. Commissioner (C. C. A.) 35 F.(2d) 178. In the failure of the record to include a copy of the actual contract for the sale of land, we are at a loss to know exactly what were the legal relations created by the contract. We cannot say that, because of some provisions which might have been in this contract, the findings of the Board were erroneous. The burden is upon the petitioner to overcome the presumption that the findings were correct.

It is true that the South Carolina courts have held in several cases that the rights of the parties to a contract of sale of real estate may become fixed before the deed is actually executed. This is pointed out in Singleton v. Cuttino, 107 S. C. 465, 92 S. E. 1046. There it is held that the legal and equitable rights of the parties were fixed by the particular contract under consideration, and that before the conveyance the vendor had the legal estate in the lands and the vendee had the equitable interest. It is pointed out there that the rights of the parties, with reference to damages for breach of contract and specific performance, were fixed by that particular contract of sale. But here we are passing upon questions involving the meaning of the word sale for purposes of income tax and are not concerned with questions relating to specific performance and breach of contract. The courts have shown a strong tendency to take the view that "the sale" for revenue purposes takes place when the deed is executed and a substantial part of the purchase price is paid. This was the view taken by this court in Stieff v. Tait (D. C.) 26 F.(2d) 489, affirmed 31 F.(2d) 1920.

Likewise, the United States Supreme Court has taken the same view upon a case involving somewhat similar facts. See Lucas v. North Texas Lumber Co., 50 S. Ct. 184, 74 L. Ed. ——, filed Feb. 23, 1930. The facts in this case were as stated in the

opinion: "The respondent, a Texas corporation, for some time prior to 1917 was engaged in operating a sawmill, selling lumber and buying and selling timber lands. December 27, 1916, it gave to the Southern Pine Company a ten-day option to purchase its timber lands for a specified price. The latter was solvent and able to make the purchase. On the same day title was examined and found satisfactory to the Pine Company. It arranged for the money needed, and December 30, 1916, notified respondent that it would exercise the option. On that day respondent ceased operations and withdrew all employees from the land. January 5, 1917, the papers which were required to effect the transfer were delivered, the purchase price was paid, and the transaction was finally closed."

The court points out that the agreement in 1916 was a mere option, and that the question of whether the income was to be received or not could not be determined until the deed was executed and a substantial portion of the purchase price actually paid. While it is possible that the contract in the case before us may contain provisions which, interpreted under the South Carolina law, would so definitely fix the right of the parties as to put upon the vendee unconditional liability for the purchase price, we cannot resort to surmise and conjecture to reverse the findings of the Board of Tax Appeals when the findings of that Board are presumptively correct. The Board viewed the transaction as constituting an executory contract. The record does not disclose anything which would justify us in upsetting this conclusion.

We point out that the attorneys for the petitioner are not responsible for the inadequacy of the record, as they only came into the case after the agreed stipulations of facts had been made. We do find in the record, however, evidence which shows that the decision of the Board of Tax Appeals is substantially just as well as presumptively correct.

The record shows that the taxpayer in this case received $10,000 in July, 1920, when the contract for the sale of lands was entered into. He received $40,000 in January, 1921, when the deed was executed. Later on, the vendee O'Dell paid him an additional $5,000 to be relieved from the terms of the contract and reconveyed the premises to Hester. Hester, therefore, has received $55,000 and had his land reconveyed to him. The $40,000 received in 1921 has therefore amounted to 72 per cent. of the money actually received by Hester out of this whole transaction. Of course, the subsequent history would have no effect in determining whether or not the transaction originally fell into the installment sale class. But it does show that the findings of the Board have worked no hardship on this particular taxpayer. The rule requiring a construction of law and facts favorable to the taxpayer has therefore, as a matter of substantial effect, been met by this decision. The decision of the Board is therefore affirmed.

Affirmed.

WADDILL, Circuit Judge, presided in the hearing of this case, but, on account of illness, did not take part in the decision.